KANSAS CITY ex rel. DIAMOND BRICK & TILE COMPANY v. SCHROEDER, VAN BUREN AND NATIONAL SURETY COMPANY, Appellants; McTERNAN-HALPIN ROCK CRUSHING COMPANY, STEWART-PECK SAND COMPANY and HALLIWELL CEMENT COMPANY, Interveners.

Division Two, May 22, 1906.

1. JUDGMENTS: One or Several. A judgment against the sureties on a contractor's bond, which sets out the amount due to each materialman, who have either as plaintiffs or interveners been made parties, and awards execution for the aggregate amount of all, is not several distinct judgments, but only one.

2. ———: ———: Stipulation for Reversal by one of Several Appellees. A stipulation entered into by appellant and one of four appellees similarly interested, in which it is agreed that the judgment shall be reversed, will not work a reversal, if the other appellees protest.

3. INTERVENTION: Motion to Strike Out: Waiver: Charter Provision: Answer. By answering and going to trial on the merits, after appellant's motion to strike out the intervening petition had been overruled, appellant waived any objection to

the trial court's ruling permitting the interveners to be made parties, and also waived its right to have considered on appeal a provision of the charter permitting intervention in like cases.

4. ———: **Usual Method: Waiver.** The usual method of raising the objection to permitting parties similarly interested to intervene is by demurrer upon the ground that there is a defect of parties, that several causes of action are improperly united, or that the interveners are not necessary parties to a complete determination of the suit. But that demurrer is waived by answering over and going to trial on the merits.

5. **STREET IMPROVEMENT: Suit on Bond: Void Ordinance: No Competition: Suit by Materialmen.** In a suit on the bond of a contractor for a street pavement by materialmen who furnished the material which went into the improvement, the defendant sureties cannot raise the objection that the ordinance directing the improvement to be done and the contract therefor are void, in that all possibility for competitive bidding was shut out, contrary to the charter. The taxbills in payment of the work having been issued and turned over to the contractor, in accordance with the terms of the contract, his sureties, when sued for the material used by him in the construction of the pavement, are not in a position to say that the contract and ordinance under which the work was done were void.

6. ———: ———: **Estoppel.** The defendants, in such case, are estopped to deny the validity of the contract because it had been fully executed.

7. ———: ———: **Materialmen: Independent of Validity of City Contract.** The contract between the materialmen and the contractor is independent of the contract between the city and the contractor; therefore, the relief to which the materialmen are entitled does not depend upon the validity of the contract between the city and the contractor.

Appeal from Jackson Circuit Court.—*Hon. Andrew F. Evans*, Judge.

AFFIRMED.

*Kimbrough Stone* and *Frank Hagerman* for appellants.

(1)    There must be a reversal of the judgment for the brick company. There were four distinct

judgments rendered against appellants, the sureties upon the contractor's bond—one for $5,132.25, in favor of the brick company, and separate judgments in favor of each of the three interveners, aggregating $2,937.86. Here a stipulation has been filed that the judgment in favor of the Diamond Brick & Tile Company against appellants may be reversed and final judgment entered either here or below in favor of said appellants. Nothing remains to be done but to enter a judgment in accordance with this stipulation. Such was the course pursued when a similar situation was presented in Remhardt v. Scarritt, 115 Mo. 51. This leaves for consideration the judgments for interveners. (2) The appeals from the judgment of the interveners should be transferred to the Kansas City Court of Appeals. Where there are appeals from interventions, the jurisdictional amount is determined from the amount recovered by each intervener, not by the sum total recovered by all the parties to the case. F. L. & T. Co. v. Waterman, 106 U. S. 265. Here the aggregate amount recovered by interveners aggregates $2,937.86. This is less than the amount necessary to sustain jurisdiction here. (3) Interveners should not have been permitted to intervene. (a) This suit was and could be only to recover for that which was claimed to be due the brick company, and a separate judgment was rendered therefor. Each intervener filed a separate petition, and a separate judgment was rendered in favor of each. Objection was made by motion to each intervener so asserting its right, and the objection was also made by motion for new trial and motion in arrest. The question is therefore presented whether, where one creditor sues, another creditor with an independent claim can intervene in that suit. (b) The right was below upheld upon the authority of section 20, article 9, charter of Kansas City. The charter cannot regulate the practice of the courts. Badgley v. St. Louis, 149 Mo. 122; State ex rel. v. Tel. Co., 189 Mo. 99. (c) The inter-

veners were not necessary parties, nor were they proper parties to this suit. R. S. 1899, sec. 542; Ins. Co. v. Lent, 75 Iowa 522. These interveners are not "interested in the subject of the action and in obtaining the relief demanded." The "relief demanded" here by plaintiff is payment for the brick furnished to it by Schroeder, a matter with which these interveners have absolutely no share or connection; therefore, whether the plaintiff brick company recovered or not cannot affect them. Neither have they "an interest in the subject of the action." Horn v. Water Co., 13 Cal. 62; Speyer v. Themels, 21 Cal. 287; Gradwohl v. Harris, 29 Cal. 154; Stich v. Dickinson, 38 Cal. 611. (4) If for any reason the brick company was not entitled to recover, then there must be a reversal as to the interveners. (5) Upon the merits interveners should not recover. 1. The ordinance directing the improvement and the contract therefor were both illegal and void. The charter of Kansas City (sec. 12, art. 17, pp. 234-235) requires in express words that all city improvements, including such improvements as that in this case, shall be let to the lowest and best bidder. That requirement is mandatory, the city legally cannot provide for the making of any improvement contrary thereto, and all ordinances and contracts in violation therof are absolutely void. McQuiddy v. Brannock, 70 Mo. App. 535; Ruggles v. Collier, 43 Mo. 353; Baha v. Taylor, 36 Mo. App. 427; Schoenberg v. Field, 95 Mo. App. 247; Swift v. St. Louis, 180 Mo. 95; Smith v. Imp. Co., 161 N. Y. 484. 2. Neither the brick company nor either intervener could recover in this case against appellants, because: (a) The contract between the city and Schroeder, the principal, was illegal; (b) The right to recover is based upon the contract; and (c) A surety's liability depends upon the validity of the principal's obligation. (a) No recovery because the contract with the city was illegal. It goes without saying that no right of action can come out of an illegal act. It is not

competent for parties to make agreements in violation of an express provision of law. Ordelheide v. Railroad, 80 Mo. App. 357; Woolfolk v. Duncan, 80 Mo. App. 421; Sedalia Board of Trade v. Brady, 78 Mo. App. 585; Swing v. Cider, etc., Co., 77 Mo. App. 391; Guenther v. Dewein, 11 Ia. 133; Reynolds v. Nichols, 12 Ia. 398; Pease v. Welsh, 39 N. Y. Supr. Ct. 514; Hale v. Henderson, 23 Tenn. 199. (b) No recovery because the right to recover is based upon that contract. Tyler v. Larimore, 19 Mo. App. 458; Kitchen v. Greenbaum, 61 Mo. 110; Parsons v. Randolph, 21 Mo. App. 353; Harrison v. McClerney, 32 Mo. App. 481; Katch v. Hanson, 46 Mo. App. 323; Kansas City School Dis. v. Shiedly, 138 Mo. 672; Gunter v. Leckey, 30 Ala. 591; Phalen v. Clark, 19 Conn. 421; Scott v. Duffy, 14 Pa. St. 18; Buck v. Albee, 26 Vt. 184; Melchior v. McCarty, 31 Wis. 252; Wells v. McGeath, 71 Wis. 196; DeWitt v. Lauder, 72 Wis. 120. "Where a contract grows immediately out of, and is connected with, an illegal or immoral act, a court of justice will not lend its aid to enforce it." Toler v. Armstrong, Fed. Cas. No. 14078, affd. in 11 Wheat. 258; Wooton v. Miller, 15 Miss. (7 Smed. & M.) 380; Buckingham v. Fitch, 18 Mo. App. 91; Leavitt v. Blatchford, 5 Barb. 9; Ball v. Davis, 1 N. Y. St. Rep. 517; Buck v. Albee, 26 Vt. 184; Deans v. McLendon, 30 Miss. 343; Barton v. Plank Road Co., 17 Barb. 397; Eberman v. Ritzel, 1 Watts & S. 181; Armstrong v. Toler, 11 Wheat. 258; Columbia Bridge v. Kline, 4 Clark 39; Branch v. Haas, 16 Fed. 53; Howell v. Fountain, 3 Ga. 176; Woolfolk v. Duncan, 80 Mo. App. 421. A contract growing out of an illegal transaction is tainted with the illegality, though it be in fact a new contract. Woolfolk v. Duncan, 80 Mo. App. 421; Hayden v. Little, 35 Mo. 418; Gwinn v. Symes, 61 Mo. 335; Sumner v. Sumner, 54 Mo. 440; Bick v. Seal, 45 Mo. App. 475. (c) No recovery against sureties because their liability depends upon the validity of the principal's obligation. The contract betwen the city and

Schroeder being illegal and void, and plaintiff's right to recover being based upon that contract, there can be no recovery against these defendants, who were sureties of Schroeder in said contract. The rule is that the surety's liability depends upon the validity of the obligation of the principal; if, for any reason, it is invalid, then the surety cannot be held. Railroad v. Smith, 27 Mo. App. 377; Hemery v. Marksberry, 57 Mo. 403; Heman v. Francisco, 12 Mo. App. 559; Macey, etc., Co. v. Heger, 195 Pa. St. 125; Mound v. Barker, 71 Vt. 253; Riley v. Jordan, 122 Mass. 231; Ernst v. Crosby, 140 N. Y. 364; Prather v. Smith, 101 Ga. 283; Edwards Co. v. Jennings, 33 S. W. 585; Kansas City v. O'Connor, 82 Mo. App. 655; Brandt on Guaranty and Suretyship, sec. 121; Chitty on Contracts, 499; Bank v. Kingsley, 2 Doug. 281; Ames v. Maclay, 14 Ia. 281; Smith v. Dickinson, 25 Tenn. 261; Janett v. Martin, 70 N. C. 459; Evans v. Roper, 74 N. C. 639; Joslyn v. Dow, 19 Hun 494; Kimball v. Newell, 7 Hill 116; Fisher v. Salmon, 1 Cal. 413; Bank v. Bank, 93 Ia. 650; Bennett v. Corey, 72 Ia. 476; Rice v. Tolman, 60 Ill. App. 516; Goodwin v. Kent, 201 Pa. St. 41. 3. Plaintiffs should not have recovered against these defendants in this proceeding for the reason that, the ordinance and contract being illegal, the city had no power to make provision in the contract for the benefit of the materialmen, and said provision is absolutely null and void: (a) Because of the lack of said power on the part of said city; (b) Because there is no such thing as a common law obligation on the part of a municipal corporation. Harbery v. Arnold, 78 Mo. App. 237; Ins. Co. v. Trenton, 42 Mo. App. 118; Howsman v. Trenton, 119 Mo. 304; St. Louis v. Von Phul, 133 Mo. 561; Hicks v. Hamilton, 144 Mo. 495; Devers v. Howard, 144 Mo. 671; Street v. Goodale, 77 Mo. App. 318; Armstrong v. School Dist., 28 Mo. App. 169; Crone v. Stinde, 68 Mo. App. 122; Vrooman v. Turner, 69 N. Y. 280; St. Louis v. Footer, 52 Mo. 513; Forry v. Ridge, 56 Mo. App. 615. 4. The fact that

the contract of the city was dual in its nature and created distinct and separate obligations, one in favor of the city and the other of the laborers and materialmen, does not help the latter, because the illegality complained of here is in the making of the contract and not in its performance. School Dis. v. Livers, 147 Mo. 581; Bethany v. Howard, 149 Mo. 513; Griffith v. Rundle, 23 Wash. 453; Dewey v. State, 91 Ind. 173; Conn v. State, 125 Ind. 514; Dolle v. Crumme, 41 Neb. 655; Kaufman v. Cooper, 46 Neb. 644; Steffers v. Lemke, 40 Minn. 27; Amorett v. Montague, 75 Mo. 43. 5. If the contract between the city and Schroeder was valid, the provision for the benefit of laborers and materialmen was void for the want of consideration. Amonett v. Montague, 75 Mo. 43; Ellis v. Harrison, 104 Mo. 270; Dunning v. Leavitt, 85 N. Y. 30; Trimble v. Strother, 25 Ohio St. 378; Brandon v. Hughes, 22 La. Ann. 360; Loeb v. Willis, 100 N. Y. 231; Wheat v. Rice, 97 N. Y. 296; Crowe v. Lewin, 95 N. Y. 423; Bank v. Bowman, 9 La. Ann. 195; Lapente v. Delaporte, 27 La. Ann. 252; Davis v. Calloway, 30 Ind. 112.

*Porterfield & Conrad* for respondent Halliwell Cement Company.

(1) The court has jurisdiction of this cause. Lee v. Jones, 181 Mo. 297. (2) The claim of the Halliwell Cement Company is rightfully asserted and ajudicated in this proceeding. 1. The paving of the street in question was a municipal act. State ex rel. v. Field, 99 Mo. 356; Kansas City v. Oil Company, 140 Mo. 471; St. Louis to use v. Von Phul, 133 Mo. 560; Kansas City ex rel. v. Scarritt, 127 Mo. 642. 2. In municipal matters Kansas City has the right to designate the mode of procedure so long as the charter provision is not in contravention of the Constitution and laws of the state. State ex rel. v. Field, 99 Mo. 352; Kansas City v. Oil Co., 140 Mo. 468; Kansas City to use v. McDonald, 80

Mo. App. 444; Charter of Kansas City, sec. 20, art. 9; St. Louis to use v. Von Phul, 133 Mo. 460. 3. This suit was originally instituted for the benefit of laborers, teamsters, owners of teams and wagons, and all parties who have furnished materials. Charter of Kansas City, sec. 20, art. 9. (3) Upon the merits the claim or demand of the Halliwell Cement Company should be sustained. 1. The contract. Charter of Kansas City, sec. 12, art. 17; Clapton v. Taylor, 49 Mo. App. 124; People ex rel. v. Gleason, 121 N. Y. 631; Verdin v. St. Louis, 131 Mo. 162; St. Louis v. Davidson, 102 Mo. 149; 2 Dillon Mun. Corp. (4 Ed.), sec. 936; McDonald v. Mayor, 68 N. Y. 23; Bigelow on Estoppel (5 Ed.), 685; Chenoweth v. Express Co., 93 Mo. App. 195; Thompson's Commentaries on the Law of Corporations, sec. 6016; City of Unionville v. Martin, 95 Mo. App. 36; Mayor v. Sonneborn, 113 N. Y. 425; Pratt v. Eaton, 18 Hun 293; Hendersonville v. Price, 96 N. C. 423; Barber, etc., Co. v. Hunt, 100 Mo. 20. 2. Appellants cannot be heard to deny the validity of said contract. Bricker v. Stroud Bros., 56 Mo. App. 188; Bigelow on Estoppel (5 Ed.), pp. 459-60; 2 Herman on Estoppel, sec. 740; Minnaugh v. Chandler, 89 Ind. 94; Sprague v. Bank, 10 Peters 257; Sprague v. Bank, 14 Peters 201; Dark v. Sherwood, 7 Wis. 446; Bank v. Reddington, 52 Mo. 456; Heath v. Bank, 44 N. H. 434; Ettlesohn v. Kirkwood, 33 Ill. App. 103; Wyncoop v. Cowing, 21 Ill. 507; St. Louis v. Davidson, 102 Mo. 149; Middleton v. City of Elkhart, 120 Ind. 166; VanHook v. Whitlock, 26 Wend. 43; City of Burlington v. Gilbert, 31 Ia. 356; Daniels v. Tearney, 102 U. S. 415; Ferguson v. Landrain, 5 Bush (Ky.) 230; Mayor v. Sonneborn, 113 N. Y. 423; City of Unionville v. Martin, 95 Mo. App. 39; Devers v. Howard, 88 Mo. App. 261; Bank v. Trust Co., 187 Mo. 494; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Bradley v. Ballard, 55 Ill. 413; U. S. v. Hudson, 10 Wall. 395; Verdin v. St. Louis, 131 Mo. 155. 3. Even though the ordinance authorizing the pavement were void, appellants are es-

topped to deny the validity of the contract. St. Louis v. Davidson, 102 Mo. 149; Devers v. Howard, 88 Mo. App. 253; City of Unionville v. Martin, 95 Mo. App. 28; Daniels v. Tearney, 102 U. S. 415; Railroad v. McCarthy, 96 U. S. 258; Bank v. Graham, 100 U. S. 699; Ferguson v. Landrain, 5 Bush (Ky.) 230; Mayor v. Harrison, 30 N. J. L. 73; VanHook v. Whitlock, 26 Wend. 43; Lee v. Tillotson, 24 Wend. 337; People v. Murray, 5 Hill 468; City of Burlington v. Gilbert, 31 Ia. 356; Railroad v. Stewart, 39 Ia. 267. 4. Even under an illegal contract relief will be granted when public interests will be better promoted thereby. Church v. Procter, 66 Fed. 246; Bank v. Trust Co., 187 Mo. 533; St. Louis v. Von Phul, 133 Mo. 561; Wright v. Pipe Line Co., 101 Pa. St. 207; Lester v. Bank, 33 Md. 558; Sparks v. Sparks, 94 N. C. 527; Whitney Arms Co. v. Barlow, 63 N. Y. 62; Story's Equity Jur., secs. 298-300. 5. The enforcement of the claim of the Halliwell Cement Company does not involve the *ultra vires* feature, if any, of the contract. McDermott v. Sedgwick, 140 Mo. 172; Sawyer v. Taggart, 77 Ky. 734; Armstrong v. Bank, 133 U. S. 469; Pollock on Contracts, 329; Johnson v. Smith, 70 Ala. 108; Martin v. Hodge, 47 Ark. 378. 6. Appellants are estopped to deny the validity of said contract, in that the same is executed. Land v. Kauffmann, 50 Mo. 243; Ragan v. McElroy, 98 Mo. 349; Ins. Co. v. Smith, 117 Mo. 261; Bank v. Trust Co., 187 Mo. 494. (4) The contract is dual in its nature. U. S. to use v. Nat. Surety Co., 92 Fed. 549; Dewey v. State, 91 Ind. 514; School Dist. ex rel. v. Livers, 147 Mo. 580; City of Bethany v. Howard, 149 Mo. 504; City of St. Louis to use v. Von Phul, 133 Mo. 561; Devers v. Howard, 88 Mo. App. 257; Conn v. State, 125 Ind. 514; Doll v. Crume, 41 Neb. 655; Kaufmann v. Cooper, 46 Neb. 644; Steffes v. Lemke, 40 Minn. 27. (5) The city made provision in said contract for the protection of materialmen. St. Louis to use v. Von Phul, 133 Mo. 561;

Knapp v. Swaney, 56 Mich. 350; School Dist. v. Livers, 147 Mo. 581; Devers v. Howard, 88 Mo. App. 253, 144 Mo. 671; Rogers v. Gosnell, 58 Mo. 590; Beattie Mfg. Co. v. Gerardi, 166 Mo. 142; Parker v. Woods, 138 Mo. 539; Crone v. Stinde, 156 Mo. 262; City of Bethany v. Howard, 149 Mo. 504. (6) On grounds of public policy, honesty and justice, the judgment of the lower court should be affirmed.

*Ball & Ryland* for respondent McTernan-Halpin Rock Crushing Company; *Johnson & Lucas* for respondent Stewart-Peck Sand Company.

(1) There can be no reversal of the judgment on the stipulation filed with that purpose. There is no judgment for the brick company. There were not "four distinct judgments against appellants." Appellants, in respect to the interest in the judgment, of the brick company, are entitled to nothing except a *pro tanto* satisfaction of that judgment. (2) There should be no transfer of the cause to the Court of Appeals. The fallacy of the second proposition of appellant's brief, that such transfer should be made, is perfectly apparent. In one and the same breath they ask the court to assume jurisdiction and enter a judgment of reversal on the stipulation filed, and then to hold that for the remnant of the case the court has no jurisdiction to determine it. They erroneously treat the cause as if there were four separate and distinct judgments, from which four separate and distinct appeals were taken. As we have seen, there was only one judgment in favor of Kansas City for the penal amount of the obligation, with execution for the aggregate amount found due each of respondents. The jurisdiction on appeal was settled and fixed by the terms of the judgment from which the appeal was taken. (3) Appellants cannot question the propriety of the intervention of these respondents. (a) Because the intervention was in ac-

cord with the procedure in such cases, prescribed by the charter. (b) The propriety of the intervention of respondents, other than the brick company, is a question that is waived by appellants on the record. Appellants did move to strike out the intervening petition of respondents. Those motions were denied. Appellants then answered and went to trial on the merits. When they did this they waived the question, under the uniform and repeated decisions of this court. The cases to this effect are too numerous to require many citations. Williamson v. Fisher, 50 Mo. 198; Haase v. Nelson Distilling Co., 64 Mo. App. 131; Rinard v. Railroad, 164 Mo. 270; Newcomb v. Railroad, 182 Mo. 687. (4) Whether the brick company, to whose use the action was originally instituted in the name of Kansas City, is or is not, on the record, entitled to recover, is perfectly immaterial so far as the rights of these respondents are concerned. We have thus far refrained from entering into any controversy tendered by appellants in respect to the general law of interventions, for the reason that in our judgment the decisions cited have no application whatever to the questions here involved, and to the attitude on the record of the respective parties. We take it that the charter provision under which the proceedings were had in the court below, are valid. We take it that, whether they are valid or not, appellants have waived the point by taking issue and pleading to the merits and trying the case. These respondents are not affected by whatever infirmities may exist in the right of the brick company to recover. There is no pretense that these respondents are subcontractors as distinguished from materialmen. There is no pretense that they did not, each of them, in good faith and in reliance on the obligation of the contractor and his sureties, furnish materials for this work to the amount and value found by the court to be due them. (5) These appellants, Van Buren and National Surety Company, as well as their principal, Schroeder, are estopped to

deny the validity of their obligation to pay the claims of these respondents. A majority of the resident owners of property along the line of the proposed improvement, petitioned the council to pave the street with this particular brick. Certainly all of the property-owners signing that petition would be estopped to deny the validity of the taxbills. The work was completed according to contract and accepted and the bills issued and delivered to the contractor. Nothing appears in the record indicating that any property-owners, either those who signed the petition or those who did not, had ever questioned the validity of the bills on this ground or any other. *Non constat* but that Schroeder collected all of them. The contract recites that it is between Schroeder, as principal and party of the first part, and appellants as sureties, parties of the second part, and the city as party of the third part, and declares, ''The said party of the first part is the lowest and best bidder for making, under provision of Ordinance No. 16877, entitled, 'An ordinance to pave Howard street from the east line of Grove street to the west line of Brooklyn avenue,' approved May 6, 1901, the following city improvements,'' etc. Ben. Soc. v. Murray, 145 Mo. 622; Reinhard v. Min. Co., 107 Mo. 616; St. Louis v. Morton, 6 Mo. 476; Lionberger v. Krieger, 88 Mo. 160; Cross v. Kansas City, 90 Mo. 13; Vaile v. Independence, 116 Mo. 333; Hill-O'Meara Const. Co. v. Hutchinson, 100 Mo. App. 294; State v. Mastin, 103 Mo. 508; Devers v. Howard, 88 Mo. App. 253. (6) Appellants are directly liable to respondents, regardless of whether the taxbills are void. They got what they contracted for— the taxbills. The consideration was ample. The validity of the major part of the bills could not be questioned. The validity of the remainder does not appear to have been questioned. Crone v. Stinde, 156 Mo. 262, overruling Hicks v. Hamilton, 144 Mo. 495; St. Louis v. Von Phul, 133 Mo. 561; School District v. Livers, 147 Mo. 580.

BURGESS, P. J.—This is a suit by Kansas City to the use of the Diamond Brick & Tile Company against S. F. Schroeder, James Van Buren, Jr., and the National Surety Company, on a contractor's bond wherein said Schroeder is principal, and Van Buren and the National Surety Company are sureties. The contract in question was for the paving of a portion of Howard street in said city. The Diamond Brick & Tile Company furnished the brick which were used in the paving.

The answer of the defendant Schroeder was a general denial. The defenses interposed by the other two defendants were, first, a general denial, and, next, a special plea alleging the invalidity of the paving contract between Schroeder and the city on the ground that it was entered into in violation of section twenty of article nine of the city charter, which requires competitive bidding in such contracts, since the ordinances authorizing and confirming said contract expressly limited the paving material to "Diamond Vitrified Paving Brick," which was made and sold exclusively by the Diamond Brick & Tile Company.

McTernan-Halpin Rock Crushing Company, Stewart-Peck Sand Company and Halliwell Cement Company each filed an intervening petition seeking to recover against defendants for materials furnished to Schroeder and by him used in the work.

Defendants Van Buren and the National Surety Company filed motions to strike out these intervening petitions on the ground that there was no legal authority permitting such interventions. These motions were overruled, and the answers which had been filed to plaintiff's petition were, by stipulation, treated as applying to the intervening petitions, and on the issues raised by them the case went to trial.

The evidence tended to show the accounts as claimed by the petitions to be due for materials furnished Schroeder by the plaintiff and the several interveners, and used in the paving done under the contract between

Schroeder and the city; that the petition for paving, the city council resolution setting forth the necessity for paving, the city ordinances authorizing the paving and confirming the contract with Schroeder, all expressly confined the paving material to "Diamond Vitrified Paving Brick;" that Diamond Vitrified Paving Brick was made and sold exclusively by the plaintiff; that there was nothing peculiar about this manufacture of brick, but that similar brick were made in various other parts of the country and by at least four other firms in Kansas and Missouri near to Kansas City; that one such firm was located in St. Joseph, Missouri, and another, the Kansas City Vitrified Brick Company, in Kansas City; that two other paving bricks of this character besides the Diamond brand had been used in the paving of streets in Kansas City and had stood the tests prescribed by the city and as paving material given as good satisfaction as the Diamond; that the brick used in such paving and furnished by the Pittsburg Vitrified Brick Company had given better satisfaction than the Diamond brand; that one Spiers, working on a commission of fifty cents a thousand brick, had secured the signers to the petition for paving this part of Howard street with Diamond Vitrified Paving Brick; that the Diamond Brick & Tile Company had, under its contract with Schroeder, furnished all of the brick used in said paving; that more than half of the cost of said paving went for the brick so furnished; and that the plaintiff sold its paving brick direct to the contractor and no brick of that brand could be bought from anyone except the plaintiff.

The appellants asked and the court refused each of the following declarations of law:

"1.  On the undisputed evidence in this case the finding of the court must be in favor of defendants, Van Buren and National Surety Company, as against plaintiff.

"2.  On the undisputed evidence in this case the

finding of the court must be in favor of defendants, Van Buren and National Surety Company, as against all the interveners.

"3. On the facts found the finding of the court must be in favor of defendants, Van Buren and National Surety Company, as against plaintiff.

"4. On the facts found the finding of the court must be in favor of defendants, Van Buren and National Surety Company, as against all interveners.

"5. The ordinance directing that the street in evidence be paved is illegal and void, in that it prevented competition as to all the brick to be used in the construction of the pavement; the charter of said city requires competition in all street improvements of that kind as to all materials going into their construction.

"6. The contract between the city and Schroeder for paving the street is illegal and void: (1) because the ordinance is illegal and void; (2) because it also prevents all competition in said brick, in violation of the charter of the city.

"7. Said contract between the city and Schroeder is void in toto, not only as to the city, but also as to the laborers and materialmen.

"8. Plaintiff is neither a laborer nor materialman within the meaning of the charter or contract.

"9. Plaintiff is a party to the contract between the city and Schroeder, made so by the requirement of the ordinance and said contract that plaintiff's brick only should be used in performing said contract, and made so by the provisions of the contract between plaintiff and Schroeder."

To the refusal of the court to give the declarations of law as asked appellants excepted.

The court specially found the facts to be that while the amounts of the bills for material went into the work, yet the contracts were promoted by the brick company and so let and made that there could be no competition, and so that no brick but that made by plaintiff

could be used, and adopted these conclusions of law:

"Under the evidence in this case the finding of the court must be:

"That the plaintiff is entitled to recover of and from the defendants said sum of $4,930.58, with interest thereon at the rate of six per cent per annum from the 27th day of August, 1902;

"That the intervener McTernan-Halpin Rock Crushing Company is entitled to recover of and from the defendants said sum of $1,134.30, with interest thereon at the rate of six per cent per annum from the 2nd day of September, 1902;

"That the intervener, Stewart-Peck Sand Company, is entitled to recover of and from the defendants said sum of $1,075.71, with interest thereon at the rate of six per cent per annum from the 15th day of January, 1903;

"That said intervener, Halliwell Cement Company, is entitled to recover of and from the defendants said sum of $637.79, with interest at the rate of six per cent per annum from the 2nd day of September, 1902.

"The ordinance providing for the paving of the street in question prevented competition as to the brick to be used in the construction of said pavement. The charter of said city requires competition in the letting of all contracts for such improvements. Said ordinance and the contract between the city and Schroeder, made in pursuance thereof, was to that extent in conflict with the charter, but whether said ordinance was absolutely void in all things or not when passed, and whether said contract was absolutely void in all things or not when executed need not now be determined; but the contract in this case between Schroeder and the city for the paving of the street in question, having been fully performed in all things, except only in the payment of materials sued for in this case and used in the construction of said pavement, the defendants are estopped to deny in this case the validity of said contract."

The court then rendered judgment, as follows:

"Now come the parties and the interveners by their attorneys, and this cause having been heretofore submitted to the court on the pleadings and evidence and the argument of counsel, and the court, having taken the same under advisement and now being fully advised in the premises, finds the issues for the plaintiffs and the interveners, and against the defendants, S. F. Schroeder, James Van Buren, Jr., and the National Surety Company.

"And the court finds that there is due the Diamond Brick and Tile Company, from said defendants, the sum of $4,930.58, with interest thereon at the rate of six per cent per annum from the 27th day of August, 1902, to this date, said interest amounting to $201.67, and that the total amount so due said Diamond Brick and Tile Company is $5,132.25 with six per cent interest from the date hereof until paid.

"That there is due the intervener, McTernan-Halpin Rock Crushing Company, from said defendants, the sum of $1,134.30 with interest thereon at the rate of six per cent per annum from the 2nd day of September, 1902, to this date, said interest amounting to $45.37, and that the total amount so due said intervener, the McTernan-Halpin Rock Crushing Company, is $1,179.67, with six per cent interest from the date thereof until paid.

"That there is due the intervener, Stewart-Peck Sand Company, from the said defendants, the sum of $1,075.71, with interest thereon at the rate of six per cent per annum from the 15th day of January, 1903, to this date, said interest amounting to $19.18, and that the total amount so due said intervener, the Stewart-Peck Sand Company, is $1,094.89, with six per cent interest from the date hereof until paid.

"That there is due the intervener, the Halliwell Cement Company, from the said defendants, the sum of $637.79, with interest thereon at the rate of six per cent

per annum from the 2nd day of September, 1902, to this date, said interest amounting to $25.51, and that the total amount so due said intervener, the Halliwell Cement Company, is $663.30, with six per cent interest from the date hereof until paid.

"That the aggregate or total amount due to the said Diamond Brick and Tile Company and the interveners, the McTernan-Halpin Rock Crushing Company, the Stewart-Peck Sand Company and the Halliwell Cement Company is $8,070.11, with interest thereon at the rate of six per cent per annum from the date hereof until paid.

"Wherefore it is ordered, adjudged and decreed by the court that the plaintiff, Kansas City, have and recover for the use and benefit of said Diamond Brick and Tile Company, and the said interveners, McTernan-Halpin Rock Crushing Company, the Stewart-Peck Sand Company and the Halliwell Cement Company, of and from said defendants, S. F. Schroeder, James Van Buren, Jr., and the National Surety Company, the sum of $9,014, the estimated cost of labor and materials, as stated in the contract between Kansas City and said S. F. Schroeder, mentioned in the petition, and that execution issue herein for the sum of $8,070.11, the aggregate amount found to be due to the said Diamond Brick and Tile Company and said interveners, together with six per cent interest thereon from the date hereof, and for costs herein."

Appellants, after motions for new trials and in arrest of judgment, perfected their appeal. There has been filed a stipulation in this court for reversal of judgment as to the plaintiff, the Diamond Brick and Tile Company.

While this suit was brought for the use of the Diamond Brick & Tile Company, other companies that had furnished material for the construction of the street intervened, and the court made a separate finding as to the amount due to each intervener, as also to the plain-

tiff, and rendered judgment in favor of Kansas City for the sum of $9,014, the penalty of the obligation, and ordered execution to issue for said sum. Appellants contend that there must be a reversal of the judgment as to the Diamond Brick & Tile Company, under the stipulation to that effect entered into between the attorneys for the company and the attorneys for James Van Buren and the National Surety Company. In making this point, appellants assert that there were four distinct judgments rendered against them as sureties upon the contractor's bond: one for $5,132.25 in favor of the Diamond Brick & Tile Company, and separate judgments in favor of each of the three interveners, the latter aggregating $2,937.86; but a casual reading of the record discloses that there was but one judgment, based upon a special finding of the amount due to each one of the parties plaintiff in this suit.

It is indisputable that when the appeal was perfected the Supreme Court had jurisdiction of the cause, the amount involved being over $4,500, and having acquired jurisdiction it cannot be shorn of it by the stipulation entered into by the Brick Company and the defendants Van Buren and the National Surety Company to the effect that the judgment as to the Brick Company may be reversed and final judgment entered either in this court or in the court below in favor of said Brick Company. In Reinhardt v. Scarritt, 115 Mo. 51, the defendants successfully demurred to plaintiff's petition in the court below, and from a judgment rendered thereon plaintiffs appealed to this court. Defendants then came into this court, confessed the demurrer, and asked that the cause be reversed and remanded only. Plaintiffs objected, but notwithstanding the objection, the judgment was reversed and the cause remanded. It will be observed that in that case the appellees all acted in concert. In the case at bar, one of four appellees is endeavoring to control a judgment, while the three others, who are similarly interested as judgment credi-

tors and appellees in the cause, are protesting against it. For this reason that case is not in point, as it would be in a case where there is but one appellee, who might, of course, dispose of his judgment as he might see proper. As there is but one judgment, the agreement by the Brick Company to its reversal, and for final judgment in favor of appellants, was without authority, and of no binding force or effect.

Defendants claim that the court erred in permitting the McTernan-Halpin Rock Crushing Company, Stewart-Peck Sand Company and Halliwell Cement Company to file intervening petitions, such permission being without authority of law. The record shows that while appellants did move the court to strike out the intervening petitions of respondents, the motions were overruled; that defendants then answered and went to trial upon the merits, and in this way waived the question. [Rinard v. Railroad, 164 Mo. 270; Liese v. Meyer, 143 Mo. 1. c. 556; Cofer v. Riseling, 153 Mo. 633; Springfield E. & T. Co. v. Donovan, 147 Mo. 622.] The objection might have been raised by demurrer upon the ground that there was a defect of parties plaintiff, that several causes of action were improperly united, or that the parties plaintiff, i. e., the interveners, were not necessary parties to a complete determination of the action. [Sec. 598, R. S. 1899.] Had objection to the petition, for the causes intimated, been made either by motion or demurrer, the petition could only been sustained, if at all, under section 20 of article 9 of the city charter, under which the interveners were permitted to intervene, the validity of which section would necessarily have been involved. But as this was not done, and as objection to the action of the court in overruling the motion to strike out said intervening petitions was waived as aforesaid, that section of the charter is not before us for review.

It is asserted by defendants that the ordinance directing the improvement, and the contract therefor,

were both illegal and void, and, being so, cannot authorize a recovery by the interveners. The force and efficacy of this objection depend upon the determination of the question as to whether the defendants are in a position to avail themselves thereof. It appears from the evidence that the work was completed, and taxbills in payment thereof issued and turned over to the contractor, all in accordance with the terms of the contract. Under these circumstances it would seem that defendants are in no position to say that the contract and ordinance under which the work was done were void, and thus escape the obligation to pay for the material used by the contractor in the construction of the work. The property owners against whom the taxbills were issued are not here complaining, nor will their rights be in any way affected by this suit, whatever the result may be. The controversy is between the contractor and the sureties upon his contract bond upon the one side, and the companies that furnished material for the work upon the other.

City of St. Louis v. Davidson, 102 Mo. 149, was an action upon a bond given by the defendant, Davidson, to the city to secure the performance of a contract on his part with the city, which contract purported to confer power on Davidson to work the city prisoners then in the workhouse at so much per head per day. After working the prisoners for several months, under the contract, the defendant Davidson abandoned it, and an action was then brought by the city, on the bond, to recover the amount due the city for labor of the persons so employed and not paid for. The defense interposed was that the contract was illegal and void as against public policy, and because the city had no authority to make the contract. The court said: "But upon a yet broader ground the defense set up in the answers cannot be maintained; the contract was not prohibited by law. The principal in that contract has derived benefits under it; he cannot retain those benefits

and repudiate the source from which they spring by denying the validity of the contract in which they originated. In short, he is estopped to grasp the benefits of that contract with one eager hand, while thrusting aside its burdens with the other." That case was followed, with approval, in Devers v. Howard, 88 Mo. App. 253, and again in the City of Unionville v. Martin, 95 Mo. App. 28.

The appellants are estopped to deny the validity of the contract because it has been fully executed. [Land v. Coffman, 50 Mo. 243; Ragan v. McElroy, 98 Mo. 349; Conn. Mutual Life Ins. Co. v. Smith, 117 Mo. 261; Bank v. Trust Co., 187 Mo. 494.]

The contract between the materialmen and the contractor is independent of the contract between the city and the contractor; therefore, the relief to which the materialmen are entitled does not depend upon the contract between the city and the contractor, but upon that between them and the contractor. The fact, therefore, that the contract between the city and the contractor may be invalid, can have no effect upon the contract between the materialmen and the contractor.

The case of the United States to use v. National Surety Company, 92 Fed. 540, raises the identical question presented on this appeal. In that case the contractor gave bond for public work provided for by a United States statute, which provided for the securing to the government the faithful performance of the contract and the protection of third persons from whom the contractor might obtain labor and material for the prosecution of the work. After the bond had been executed, it was changed by the government and the contractor, without the knowledge of the sureties of the contractor's bond. In a suit on said bond by the materialmen the sureties claimed release from the bond by reason of said change. The court said: "The bond which is provided for by the act was intended to perform a double function, in the first place, to secure the

government, as before, the faithful performance of all obligations which a contractor might assume towards it; and, in the second place, to protect third persons from whom the contractor obtained material or labor. Viewed in its latter aspect, the bond, by virtue of the operation of the statute, contains an agreement between the obligors therein and such third parties that they shall be paid for whatever labor or material they may supply to enable the principal in the bond to execute his contract with the United States. The two agreements which the bond contains, the one for the benefit of the government, and the one for the benefit of third persons, are as distinct as if they were contained in separate instruments, the government's name being used as obligee in the latter agreement merely as a matter of convenience. In view of these considerations, we are of the opinion that the sureties in a bond, executed under the act now in question, cannot claim exemption from liability to persons who have supplied labor or material to their principal to enable him to execute his contract with the United States, simply because the government and the contractor, without the surety's knowledge, have made some changes in the contract, subsequent to the execution of the bond given to secure its performance, which do not alter the general character of the work contemplated by the contract or the general character of the materials which are necessary for its execution. When the government has executed the contract and taken and approved the bond, it ceases to be the agent of third parties whom the contractor employs in the execution of the work or from whom he obtains materials, and the rights of such persons under the bond are unaffected by subsequent transactions between the government and the contractor. If such were not the case, it would be possible for the contractor and some officer of the United States, by making some change in the contract or specifications, to deprive laborers and materialmen of all recourse against the sure-

ties in the bond after they had supplied materials and labor of great value in reliance upon its provisions. It is not probable that such a result was contemplated by the lawmaker. On the contrary, the act bears every evidence that it was intended to provide a security for laborers and materialmen on which they could rely confidently for protection, unless they saw fit, by their own dealings with the contractor, to relinquish the benefit of the security. We are confirmed in these views by the following authorities: Dewey v. State ex rel., 91 Ind. 173; Conn v. State ex rel., 125 Ind. 514; Doll v. Crume, 41 Neb. 655; Kauffman v. Cooper, 46 Neb. 644; Steffes v. Lemke, 40 Minn. 27."

In the case of School Dist. ex rel. v. Livers, 147 Mo. 580, the defendant acquired the contract for erecting an addition to Central High School in Kansas City and gave a bond in a designated sum, conditioned that the bond was executed not only for the protection of the School District, but also for the benefit of all parties who might use material in the building, and any such parties having unpaid bills therefor might in the name of the school district maintain an action on the bond to recover the amount of such bills. In a suit upon the bond the court said, page 584: "The bond is dual in its nature, being for the benefit and protection of the school district against loss or damages for the non-fulfillment of their contract by the contractors, and the payment by them of laborers for work done, and of materialmen for materials furnished, rights which when once fixed could not be destroyed or taken away by any act of the school district." [City of Bethany v. Howard, 149 Mo. 504; Kansas City to use v. McDonald, 80 Mo. App. 444; St. Louis to use v. Von Phul, 133 Mo. 561; Devers v. Howard, 88 Mo. App. 253, l. c. 257.]

The city, in requiring bonds from contractors for public work, was in discharge of a moral obligation to the laborers employed upon such works and the materialmen who furnished material therefor, in the absence

of which bond they are without recourse for compensation. A similar bond was involved in the case of St. Louis to use v. Von Phul, 133 Mo. 561, in which MacFarlane, J., speaking for the court, said: "Through considerations of public policy, the law has made no provision by lien, or otherwise, for the protection of the laborer and materialmen for labor employed or materials used in improving the public streets. But it cannot be denied that the same equity exists, and that the same moral obligation rests upon the city to protect those who improve its streets as rest upon those making private improvements. 'Individuals clothed with public functions, even when constituting a corporation, are no more excused from moral obligations than when acting in a private capacity' "— citing Knapp v. Swaney, 56 Mich. 350. In the case of Devers v. Howard, 88 Mo. App. 253, the object of the bond was twofold: for the faithful performance of the work, and for the purpose of securing all persons who might perform labor or furnish materials for the construction of the well. Plaintiff was a materialman and sued on the bond for the material used in the construction of said well. The finding of the trial court was for the plaintiff, and upon appeal the same was affirmed by the Kansas City Court of Appeals. The right and power of the city to require the bond in question was challenged by the defendant, and the court said: "Since the decision of the case of 144 Mo. 680, and in St. Louis v. Von Phul, 133 Mo. 561, and Rogers v. Gosnell, 58 Mo. 590, it is no longer an open question but what a city has the right to require such bond as the one in question herein." [Devers v. Howard, 144 Mo. 671.]

Our conclusion is that the judgment is for the right parties and should be affirmed. It is so ordered.

All concur.