### KANSAS CITY HYDRAULIC PRESS BRICK CO. v. NATIONAL SURETY CO.

(Circuit Court, W. D. Missouri, W. D. November 25, 1907.)

#### No. 3,113.

MUNICIPAL CORPORATIONS—CONTRACTOR'S BOND TO PAY FOR LABOR AND MATERIALS—VALIDITY.

Gen. St. Kan. 1901, § 747, requires paving contracts made by a city of the first class to be let on competitive bids to the lowest and best bidder; and section 5130 requires every contractor for public work to give a bond conditioned for the payment of all bills for labor and materials. Plaintiff, which was a manufacturer of paving brick, procured the invitation of bids by such a city for paving certain streets with brick of a certain brand made only by plaintiff, which had registered such brand as a trade-mark, and the letting of contracts on such bids. The contractor gave the bonds required by the statute, and plaintiff brought action on such bonds against defendant, as surety, to recover a balance alleged to be due it for brick furnished under the contracts. *Held*, that the contracts were illegal, because under the proposals there was no opportunity of competitive bidding as to the material to be used, although there were other makes of brick equally as good; that the bonds were an essential part of such contracts; and that plaintiff, having been an active participant in the fraudulent transactions, could not recover thereon.

On Motion by Defendant for Directed Verdict.
See 149 Fed. 507.

Botsford, Deatherage & Young and McFadden & Morris, for plaintiff.

Frank Hagerman and A. L. Berger, for defendant.

McPHERSON, District Judge. This is an action to recover on bonds of one Atkin, who entered into contracts for paving three certain streets in Kansas City, Kan., a city of the first class. Two of the contracts were to be carried out by paving with brick to be furnished by the Diamond Brick & Tile Company, the predecessor of plaintiff, which assigned its contracts to plaintiff. In the other, plaintiff directly contracted with Atkin. The brick were all the same, manufactured at one plant, in Kansas City, Mo., and were known as "Vitrified Paving Brick, Diamond Brand," and covered by a trade-mark. The defendant herein is surety on each of the contracts of Atkin, becoming such for a money consideration, presumably the usual and reasonable pre-

miums.   An action was brought in a state court of Kansas, resulting in a judgment for plaintiff, which was reversed by the Kansas Supreme Court (National Surety Co. v. Kansas City Hydraulic Press Brick Co., 84 Pac. 1034), and the case remanded, and then by plaintiff dismissed without prejudice.

Thereupon this action was brought.   One pleaded defense is that the action is barred by the statute of limitations—held bad on demurrer at a prior term.   Another defense pleaded is that the plaintiff did not take out a license in Kansas City, Kan., to do business, as required by ordinance.   This merits no attention.   Another defense is that of denial.   The evidence shows that, as to form, the contracts were entered into, that Atkin paved the streets, that he obtained the brick from the plaintiff and its predecessor, and that a balance is due, although as to this the evidence may or may not be certain, thus presenting a question of fact for a jury, and that question is passed.

The substantial question is as to the legality or illegality of the contracts, including plaintiff's contract to furnish the brick.   The Kansas statutes (Gen. St. 1901, § 747) require for all such improvements that there shall be competition, and the contract let to the lowest bidder, and when award is made that the contractor give a bond.   He has no contract until he gives the bond.   His contract, so called, cannot be entered into until he gives a bond.   The one is part of the other, and the two are not only connected with each other, but it takes the two to complete the transaction.   Atkin had no right to a contract, and could have none, until he gave the bonds in suit to pay for materials. These bonds were to secure the payment to innocent laborers and material furnishers, without which bonds payments could not be secured, either by garnishment or mechanic's lien proceedings; and to such laborers and material furnishers the defendant, as surety, is liable, and such was the holding of the Missouri Supreme Court in the recent case of Kansas City v. National Surety Company and Others, 196 Mo. 281, 93 S. W. 405, which decision meets the approval of this court.   But, as I shall presently show, that decision is not all in point, because the question of the claim of an honest or innocent material furnisher is not here involved.   Nor is the question here presented, as in many cases cited, where there is an illegal contract, but separately and apart from it a new contract is entered into, with a new and independent consideration.   Such contracts are enforceable.   But we have no such case here; and what is now decided is, of course, the precise case before the court and jury.   And what is the case?

To accommodate witnesses, and at plaintiff's request, much evidence was introduced out of its order, but is now in the record.   This evidence shows the following to be the facts:   The plaintiff makes a brick like scores of others make, neither better nor poorer; but no one makes the brick with the particular name.   But, of course, the name or brand or trade-mark counts for nothing, because the quality of the bricks only are to be regarded in paving, both as to the abutting lot owners and those who travel over the streets.   But under these contracts other brick equally as good and equally as cheap were shut out by a cunning, but stupid, device or trick.   It is said that the statute, which requires protection to the public and lot owners, was complied

with; but it is not so. No one but those with whom plaintiff would deal was allowed to bid or compete; so that the patent cases cited do not have any bearing, because patented articles are unlike unpatented articles. Nor could any other plant manufacture like brick, or like quality, of like brand, because that would be an infringement of the trade-mark; so that, instead of the fact that plaintiff's brick, as to brand, being covered by a trade-mark aiding it, the fact of the matter is that the trade-mark aggravates and intensifies it, because it thereby corrupts the transaction. It was made impossible for the brick to be secured elsewhere than of plaintiff's plant.

The evidence shows that plaintiff took the initiative in these illegal contracts. It employed solicitors to obtain the preliminary petitions. It obtained the signatures on which the council acted. It was a party to the entire scheme, and that scheme was an illegal one, cutting off competition. The so-called bidding was but a pretense, or, if more than that, otherwise only bidding as to such brick as could be obtained from the plaintiff, and no one else. Can it be possible that such an artifice as that can be regarded as competitive bidding? The Kansas Supreme Court, in construing the statute in question in the very case now before this court, held that it was an illegal contract; that the bond in suit was part of that contract, and not an independent transaction; and that plaintiff was a party thereto. I fully agree with the Kansas Supreme Court. All people know the evils that existed in the municipal governments in this country—that favored contractors made the public improvements, and that independent contractors were compelled to stand aside. The people were imposed on and compelled to bear the heavy burdens. Some of the states, like Kansas, have by legislation sought to end those impositions, by having the contracts made in the open light of day, with full opportunity to all to bid. That is just what was denied in this case at bar; and the plaintiff brought it about. It could not recover as against the principal, and for more cogent reasons cannot recover against a surety.

It is said that no abutting property owner has objected, and could not object after 30 days, which only shows that a property owner prefers to pay a few hundred dollars rather than engage in litigation, and for that reason submitted to the impositions brought about by these illegal contracts, and those contracts were brought about by the plaintiff.

The motion for a peremptory direction to the jury to return a verdict for the defendant is sustained, to which plaintiff excepts, and there will be a judgment against plaintiff for costs, to which plaintiff excepts; and plaintiff is given 90 days to file a bill of exceptions.