MARYLAND CASUALTY CO. v. PORTLAND CONST. CO. et al.

No. 316.

Circuit Court of Appeals, Second Circuit.

June 18, 1934.

M. G. Leary and K. Paul Fennell, both of Burlington, Vt., for appellant.

Francis E. Morrissey, of Bennington, Vt., for Village of Bennington.

E. H. Holden, of Bennington, Vt., and B. L. Stafford, of Rutland, Vt., for certain materialmen.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff is a surety company which on April 26, 1923, executed a bond to the defendant, the Village of Bennington, Vermont, to secure the performance by the defendant, Portland Construction Company, of a contract to lay a pavement and sewer in a street of the village. The condition of the bond among other things was as follows: That the contractor "shall in all respects comply with the terms of the contract * * * and in a manner satisfactory to the Village

of Bennington complete the work contracted for, and shall save harmless the Village of Bennington from any expense incurred through the failure of said Contractor to complete the work * * * and from any damage growing out of the carelessness of the Contractor * * * and from any liability for payment of wages or salaries done or materials furnished said Contractor; and shall well and truly pay all and every person furnishing material or performing labor in and about the construction of said roadway all and every sum or sums of money due him, them, or any of them, for all such labor and materials for which the Contractor is liable." The contractor assigned the contract to a bank with the consent of the village shortly after it was made, and undertook the work. By November 7, 1923, it was substantially completed at the agreed price of $85,159.24, of which $68,345.90 was fixed by the original contract and the rest was for extras, some at unit prices fixed in the contract, some on a cost plus 15% basis. The village had already paid $71,832.19, leaving $13,327.05 due; more than the reserve provided in the contract of 10% "of the total amount of work performed, except that in. the case of the final estimate the full amount will be paid upon the official acceptance of the completed contract." The village's assistant engineer certified that the work had been completed, and called his certificate a "final estimate." However he recommended the retention of $500 in accordance with an annexed letter of the chief engineer, and of another $575 to answer a garnishment. The balance, $12,252.05, the village paid to the bank on the eighth. The engineer's annexed letter declared that he had "rendered the final estimate, $85,159.24, which is ready for payment except for the trimming up and a few corrections for which I would suggest you hold or retain $500." Between November seventh and November twenty-fourth added work was done amounting to $771.44, and at some time before December tenth still more, amounting after deductions to $191.52. Thus there was due to the bank $2,037.96, which the engineer certified in an "additional final estimate." Between November seventh and December tenth two other garnishments had issued and one more on the tenth; the village has never paid the balance.

■ The contractor became insolvent, leaving unpaid ten creditors, the aggregate of whose claims with interest is something less than $10,000. All were for labor or materials furnished "in and about the construction of the roadway" (except those of Adams and of

Marshall as to which there is a dispute), and the creditors asserted that the surety was directly liable to them. The surety filed this suit, seeking to have the whole litigation resolved in one decree; and since no one has questioned the equity of the bill, we will not, for the substantive jurisdiction of the District Court is undoubted. The village filed a counterclaim setting up the claims of the ten creditors against the surety, and alleging that it was liable upon its promise to pay the creditors, on which the village might sue as trustee. The surety answered, first, that the bond did not make it liable to creditors of the contractor; second, that the village had discharged it in full, or at least pro tanto, by the payment to the bank on November eighth before final completion of the work; third, that the village had no power under the contract to consent to the assignment to the bank; fourth, that the village was bound to see that the moneys paid to the contractor or the bank went to the contractor's creditors; and finally that on no theory was it liable for the Adams and Marshall claims. The judge overruled all these defenses and gave judgment against the plaintiff in favor of most of the contractor's creditors; those claims which he disallowed are not before us. Against this he allowed a credit to the plaintiff of the unpaid balance in the hands of the village which he directed it to pay to the creditors. The plaintiff appealed.

■ The chief issue is as to the liability of the surety to the contractor's creditors by virtue of its promise in the bond. If this case had arisen in New York, it would be ruled directly by our decision in Maryland Casualty Co. v. Board of Water Commissioners, 66 F. (2d) 730, but as that depended upon New York decisions, some consideration of those in Vermont or elsewhere is necessary. There is no doubt that as matter of construction the surety promised the village to pay all the contractor's creditors; this is made plain not only from the words used, but because the promise was additional to an earlier one to save the village harmless against those very claims. United States, to Use of Stanstead Granite Co., v. U. S. Fidelity & G. Co., 78 Vt. 445, 454, 63 A. 581. As to the resulting right of action it is true that in Vermont as at common law, only a party to a sealed instrument may sue upon it, and this includes a promise for another's benefit. Fugure v. Mutual Society, 46 Vt. 362. But the promisee may sue upon such a promise, sealed or parol, and apparently recover full damages on behalf of the beneficiary, who in effect controls the litigation. Powers v. New Eng-

land Fire Ins. Co., 69 Vt. 494, 38 A. 148; Fairchild v. North Eastern Mut. Life Ass'n, 51 Vt. 613. There are indeed theroretical difficulties in allowing a recovery of more than nominal damages (Williston, § 357), which a suit in equity for specific performance would best solve (Williston, §§ 358, 359); but with this we need not concern ourselves. Here at any rate the claim is put forward in a suit, not an action, and indeed no counterclaim was necessary, because the very frame of the bill required that all debts should be adjudicated and paid. It is enough that in some form and in some forum the contractor's creditors had recourse against the surety, even though the village must be a party. We do not rely upon United States, to Use of Stanstead Granite Co. v. U. S. Fidelity & G. Co., supra (78 Vt. 445, 63 A. 581), because it arose under the act of Congress, and it is not clear how far this determined the decision. Nor is Green v. McDonald, 75 Vt. 93, 53 A. 332, in point; that was the quite other situation of a "creditor beneficiary," not a "donee beneficiary"; the promise was to pay a debt owed by the promisee to another. But we agree with the judge that under the law of Vermont, as generally elsewhere in this country, the contractor's creditors could recover of the surety on its promise to the village.

The next question is of the effect of paying the reserved percentage before completion and acceptance of the work. If we were pressed to a decision we are by no means satisfied that the retention of $500 to finish odds and ends destroyed the finality of the engineer's estimate of November seventh. Certainly the additional work done thereafter did not hold up the contractor's right to what he had earned. But it is not necessary to go into that issue at all; the surety has indeed an interest in such a reserve so far as concerns any obligations between himself and the owner. Prairie State Nat. Bank v. U. S., 164 U. S. 227, 17 S. Ct. 142, 41 L. Ed. 412; Maryland Casualty Co. v. Board of Water Com'rs, supra, 66 F.(2d) 730, 736. But he has no such interest when his relations with the contractor's creditors are at stake; the two promises are in substance made to different persons. The first is to save harmless the owner from any loss caused by the contractor's default; the second is to pay the contractor's creditors. Neither is indeed a primary obligation, and the promisee formally is the same in each, but the owner is the real creditor in the first, and the laborers and furnishers of material in the second. For this reason tampering with the reserve percentage will have a different result in the two cases. If the surety completes the work, or is compelled to pay the owner, he becomes subrogated to any claims which the owner has against the contractor, including the owner's security. The percentage is such a security, and if the owner impairs it he must bear the loss. But the percentage is not in any sense security for the contractor's creditors upon the contractor's promise to pay them; when paid to him it becomes free assets which he may devote to them or to any other purpose; they have no lien upon it unless by statute or separate agreement. There are therefore many authorities which hold that nothing which the owner does will affect the creditors' rights under such a promise; some of them were decided in precisely this situation, that is, when the owner had paid over the reserved percentage before the contract authorized it. It is of no moment in this regard whether the surety was liable by statute or by agreement. Equitable Surety Co. v. U. S., 234 U. S. 448, 34 S. Ct. 803, 58 L. Ed. 1394; Glades County, Fla., v. Detroit F. & S. Co., 57 F.(2d) 449, 451 (C. C. A. 5); United States v. Illinois Surety Co., 226 F. 653, 660, 661 (C. C. A. 7), affirmed sub nom. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; Chaffee v. United States F. & G. Co., 128 F. 918 (C. C. A. 8); Standard Asphalt, etc., Co. v. Texas Building Co., 99 Kan. 567, 162 P. 299, L. R. A. 1917C, 490; Kansas City v. Schroeder, 196 Mo. 281, 93 S. W. 405; Doll v. Crume, 41 Neb. 655, 59 N. W. 806; Getchell & Martin L. & Mfg. Co. v. Peterson et al., 124 Iowa, 599, 100 N. W. 550; Steffes v. Lemke, 40 Minn. 27, 41 N. W. 302; Ætna Indemnity Co. v. Indianapolis Mortar & Fuel Co., 178 Ind. 70, 98 N. E. 706; Griffith v. Rundle, 23 Wash. 453, 63 P. 199, 55 L. R. A. 381.

Next is the question of the village's assent to the contractor's assignment to the bank. It is a little hard to understand on what theory this defense is founded; apparently it is that the assignment was a material variation of the contract. Assuming as much for argument, the point is in any event irrelevant for the contract provided that it might be assigned with the written consent of the village, and this was obtained. The surety argues that this was given after the assignment had been executed and delivered, and that the contract declared that it should be got before. The record does not show when the village consented; the consent is affixed to the assignment and may well have been simultaneous with it. But the matter is of no moment anyway; assuming that there

was an interval, nothing happened to the surety's prejudice meanwhile. The fourth point has already been answered. If the reserved percentage was not a security for the surety's obligation to the creditors, it made no difference how the village or the bank used it.

[11-16] There remains only the question of the Adams and the Marshall claims, which depend upon the scope of the promise in the bond. Were these for "furnishing material or performing labor in and about the construction of said roadway"? The Adams claim was all for materials, such as nails, paper, roofing, rope, twine, waste, kerosene, machine oil, grease, oakum, paint, and brushes. We held in Maryland Casualty Co. v. Board of Water Commissioners, supra, 66 F.(2d) 730, in the case of a New York bond where the phrase was as here, "in and about the improvement," that we would construe it in conformity with the New York Lien Law (Consol. Laws c. 33), § 5, which used the words, "furnished to the contractor." The corresponding phrase of the mechanics' lien law of Vermont has not been construed, and the question is therefore left at large; but the plaintiff does not really appear to dispute that if these goods were used in laying the pavement and the sewer, they were within the clause. The challenge is rather to the proof that they were so used. At the outset the claimant's witness said in answer to the judge that they had been used on the job, but later he withdrew some items and presented a list amounting to $355.34, which in his opinion had all been used. The judge so found and the record is at least too uncertain to justify any modification.

The Marshall claim was quite different. This claimant maintained a garage in Bennington and the account was made up of a great many items either of materials, such as gas, oil, grease, and motor parts, or of labor, all furnished in keeping in service trucks used by the contractor on the job. Although we are free to interpret the language as it seems to us to have been intended, the ruling of the Supreme Court under the federal statute which imposes a liability in substance the same as that of the bond, affords a standard. Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. Under the doctrine of that case the gas, oil and like which were necessary to operate the trucks seems to us to be materials used "in and about the construction of the roadway"; so too labor necessary for the general upkeep of the trucks; they are indistinguishable from the materials to run

them. Among the items, however, are some which cannot be so regarded; new parts substituted in the trucks for those outworn. Maryland Casualty Co. v. Ohio River Gravel Co., 20 F.(2d) 514, 518 (C. C. A. 4). These may indeed have been only current repairs, in which case they would be allowable, but the claimant had the burden, and it does not appear that they were not substantial replacements. We rule out the following items: On May 21, valves, $10.59; 4 exhaust and inlet valves, $10.50; on May 25, one carburetor, $25; on May 29, "parts for truck," $31.77; on June 7, "parts C. O. D. $154.80"; on June 25, differential casing, $56.59; tire and tube, $52.45. The total of these is $341.70. The balance seems to us allowable, for although it does not appear as definitely as we could wish that all the labor was for current repairs, the claimant made out a prima facie case. The costs of the suit against the village as well as the attorney's fee and the expenses of bringing on the witness, Breed, were all recoverable under the broad indemnity clause of the bond.

Decree modified by deducting from the Marshall claim $341.70 with interest, and as so modified, affirmed. Costs of the appeal to the appellees.