KANSAS CITY to the use of WILLIAM MULLINS, Respondent, v. PAT McDONALD, Defendant; L. D. H. RUSSELL et al., Appellants.

### Kansas City Court of Appeals, May 8, 1899.

1. **Kansas City Charter**: SEWER BUILDING: SUBCONTRACTOR V. LABORER: SURETY. A subcontractor to build a sewer can not invoke section 20, article 9 of the freeholders' charter of Kansas City, nor the provision and guarantee in the original contractor's contract to pay the labor of all laborers, etc., and can not sustain an action against the sureties of the original contractor.

2. **Definitions**: LABORER. A laborer is one who labors with his physical power and under the direction of another at fixed wages.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED.

L. A. LAUGHLIN for appellants.

(1) The vital question in the case is whether Mullins is a laborer within the meaning of section 20, article 9, of the charter of Kansas City. Erath v. Allen, 55 Mo. App. 107, is decisive of this case as the facts can not be distinguished. Linnenkohl v. Winkelmeyer, 54 Mo. App. 570, 573; Freeman v. Aylor, 62 Mo. App. 613, 616; Kelly v. Rowane, 33 Mo. App. 440; O'Brien v. Mayer, 23 Mo. App. 648, 653; Heman v. Improvement Co., 58 Mo. App. 480, 485; Gregg v. Dunn,

38 Mo. App. 283; Vane v. Newcomber, 132 U. S. 220.
(2) A subcontractor is bound by the terms of the contract
between his principal contractor and the owner. Epeneter v.
Montgomery Co., 98 Iowa, 159; Foster v. Swaback, 58 Ill.
App. 581; Rogers v. Railroad, 85 Me. 372; In re Ho King,
14 Fed. Rep. 724; Weymouth v. Sanborn, 43 N. H. 171;
Coal & Nav. Co. v. Railroad, 29 N. J. Eq. 252; Railroad v.
Callahan, 49 Ga. 506; Peck v. Miller, 39 Mich. 594.

BROWN, HADLEY & SWIFT for respondent.

The object and purpose of section 20, article 9 of the
charter of Kansas City were not solely for the protection of
the "common laborer" or "mechanic." Its purpose is to se-
cure payment for all labor done and all materials furnished
in the construction of public works. The charter provided
for the protection of all who contribute to the completion of
the work. Mullin's claim was clearly within the letter and
spirit of the charter, which being remedial should be loosely
and not strictly construed. Charter of Kansas City, art. 9,
sec. 20; St. Louis ex rel. v. Von Phul, 133 Mo. 561; Seeder's
Appeal, 46 Pa. St. 57; O'Brian v. Hamilton, 12 Phila. 387;
Phil. Trust Co.'s Appeal, 2 W. & C. 593; Warner v. Railway,
5 How. Prac. 454; Watson v. Mfg. Co., 30 N. J. Eq. 388;
Peck v. Miller, 39 Mich. 394; Dillon v. Hunt, 82 Mo. 150,
156; Linnihan v. Rollins, 137 Mass. 123.

GILL, J.—McDonald entered into a contract with Kan-
sas City to build a sewer. As required by the city charter,
he covenanted "to pay for the work and labor of all laborers
and teamsters, teams and wagons employed on the work,
and for all materials used therein," and the performance of
said covenant was guaranteed by defendants
STATEMENT.     Russell and Wyman. Plaintiff Mullins en-
tered into a contract with McDonald to do the

entire brick work of the sewer, its laterals, catch-basins, etc., at stipulated prices per lineal foot and so much for each catch-basin, the materials however to be furnished by McDonald. When the sewer was finished, it seems that Mullins was not paid in full and besides he (Mullins) had not paid the laborers employed in the work contained in his subcontract. This action was then brought in the name of the city to the use of Mullins and said laborers to recover the respective amounts alleged to be due them for work on the sewer, the suit being based on the covenant of McDonald's contract to pay laborers and which was guaranteed by defendants Russell and Wyman.

In the circuit court the case was sent to a referee, who found and reported the respective amounts due the several laborers employed on the work, and as to Mullins, the subcontractor, the referee at first reported that there was due said Mullins a certain amount, but that as this amount was in part for profits and part labor (the proportion whereof he was unable to decide), the claim was rejected as not within the work of a laborer guaranteed by the defending sureties. The court sustained Mullin's exceptions to the report, re-referred the matter, and directed the referee to take further testimony and report the amount and value of whatever manual labor was done by Mullins, the subcontractor himself, on the sewer. The referee took further testimony and by a supplemental report found that said subcontractor did in person twenty-seven days' actual labor, which was reasonably worth $5 a day, or $135. Upon this the court entered a judgment in plaintiff's favor for said amount, and McDonald's sureties have appealed.

I.   This proceeding is based on section 20, article 9, of the Kansas City charter, wherein it is provided that "contracts for constructing sewers, etc.   *   *   *   shall contain a covenant on the part of the contractor with the city to pay for the *work and labor of all laborers* and teamsters, teams and wagons

employed on the job, and for all materials used therein, and performance of such covenant be <span>Kansas City charter: sewer building: subcontractor v. laborer: surety.</span> guaranteed by two or more sureties signing the contract   \*  \*  \*   but who shall not be liable beyond the estimated cost of the materials used and the labor done upon the job to be stated in the contract.   \*  \*  \*   Laborers and teamsters, and owners of teams and wagons, who may do work, and parties who may furnish materials stipulated for by any such contract, may recover in an action in the name of the city for their use," etc.

These defendants signed a contract and guarantee as above provided. The decisive question is, was Mullins a *laborer* on this work within the meaning of the above mentioned charter provision? If not, then his claim must fail, for it is clear that he can not be classed under that of teamster, owner of teams or wagons or one furnishing materials. The case is quite similar to that of Erath v. Allen, 55 Mo. App. 107. There the plaintiffs did the cut stone work of a public building in Nebraska under a contract with the principal contractor for the entire structure and there, as here, a bond was given, in pursuance of the Nebraska statute, for "the payment of *all laborers*  \*  \*  *for their labor* that shall be performed in erecting the buildings," etc. The plaintiffs, as subcontractors, in that case, performed the work in question by hiring others and doing some manual work themselves. But it was held that they did not come within the class of *laborers* intended to be protected by the statute and bond, and recovery against the sureties was denied. It was there decided that the bond did not cover the amount due a subcontractor even though he himself may have done some of the manual labor on the work. After reviewing the cases Judge Smith uses this language: "The conclusion to be deduced from these cases is that a subcontractor is no more a mechanic or laborer than the principal contractor, and that the beneficial provisions of the statute

relied on in this case can not be invoked by the plaintiffs. They are subcontractors and are to be distinguished from the two classes of persons named in the statute, and for whose benefit alone the statutory indemnity is provided." In addition to those cited by Judge Smith, the following cases are also in point. Rogers v. Railroad, 85 Me. 372; Aikin v. Watson, 24 N. Y. 482; Railroad v. Callahan, 49 Ga. 506; Navigation Co. v. Railroad, 29 N. J. Eq. 252; Railway v. Baker, 14 Kan. 563; Vane v. Newcomber, 132 U. S. 220.

In the Maine case, above cited, it was held that a statute of that state which imposes a liability on a railroad corporation to pay for the work of *laborers* employed in constructing the road, does not apply to the labor of a subcontractor personally expended with that of a crew employed by him upon a section of the road which he has contracted to build. In course of the opinion this pertinent language is used: "Etymologically the word 'laborer' may include any person who performs physical or mental labor under any circumstances; but its *popular meaning is much more limited. The farmer toil-*ing on his own farm, the blacksmith working in his own shop, the tailor making clothes for his own customers, is not called a laborer. One who performs physical labor, however severe, in his own service or business, is not a laborer in the common business sense. A contractor who takes the chance of profit or loss is not a laborer in that sense. In the language of the business world, a laborer is one who labors with his physical powers in the service and under the direction of another for fixed wages. This is the common meaning of the word and hence its meaning in the statute."

DEFINITIONS: laborer.

In the light of these adjudged cases, and many others that might be cited, we think it clear that plaintiff Mullins does not come within the designation of laborer found in the section of the Kansas City charter before quoted. He was not a *laborer* on the work, but a subcontractor, and not

protected by the guaranty of these appealing defendants. The charter provision was intended for the protection of a *class* to which the plaintiff did not belong.

While it may be, and is contended that this is a remedial provision of charter law, and should be liberally construed, yet it must also be remembered that this is a proceeding to charge sureties who are favorites of the law and they will not be held beyond the fair and plain import of the language used.

In our opinion then, the plaintiff had no case, and the judgment in so far as concerns his claim will be reversed. All concur.