ENERGY MASTERS CORPORATION, Successor by Merger to Associated Engineering Consultants, Inc., Appellant,

v.

Sue FULSON, et al., Respondent.

No. WD 45394.

Missouri Court of Appeals, Western District.

Aug. 25, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied Sept. 29, 1992.

Application to Transfer Denied Nov. 24, 1992.

Jack E. Smith, and William C. Partin, Kansas City, for appellant.

Shirley Ann Ward Keeler, Kansas City, for respondent.

Before SHANGLER, P.J., and KENNEDY and SMART, JJ.

SHANGLER, Presiding Judge.

Energy Masters Corporation [EMC][1], a professional engineering firm, appeals a summary judgment in favor of the Directors of the School District of Kansas City, Missouri. The School District engaged Solomon Claybaugh Associates [SCA] as its prime contractor for architectural and engineering services on a project to renovate Lincoln South Middle School. SCA contracted with AEC for mechanical and electrical engineering services, which were performed in a workmanlike manner. The School District paid SCA the sums due under the general architectural and engineering contract, but SCA failed to remit to AEC.

EMC sued SCA, then defunct and without assets, and the Directors of the School District. SCA confessed judgment in the sum of $20,144.71, and the court entered separate judgment accordingly. The plaintiff EMC and the defendants Directors of the School District cross-moved for summary judgment. Summary judgment was granted to the Directors of the School District and denied to EMC. This appeal followed.

The theory of the claim pleaded by EMC against the Directors was that, under § 107.170, RSMo 1986, in making contracts for public works, the individuals who were the Board of Directors of the School Dis-

---

**1.** The plaintiff Energy Masters Corporation, a Missouri Registered Engineering Corporation, is the successor by merger to Associated Engineering Consultants, (AEC) also a Missouri Registered Engineering Corporation.

trict had the duty to require every contractor for such work to furnish a bond with good and sufficient sureties in an amount fixed by the School District, and conditioned on the payment of all labor performed, whether by subcontractor or otherwise. The pleading alleged also that SCA was a *contractor* within that statute, and that the Board of Directors breached its duty under § 107.170 by failing to require SCA to furnish such a bond for the payment of its subcontractors.

The defendants Directors argue that professional services are not covered by the bond requirement of § 107.170 and therefore the claim EMC pleads does not come within the statute. The issue for summary judgment as well as for review, therefore, is the construction of a statute a question of law.

■ Section 107.170 provides:

**107.170 Bond—public works contractor**

1. It is hereby made the duty of all officials, boards, commissions, commissioners, or agents of the state, or of any county, city, town, township, school, or road district in this state, in making contracts for public works of any kind to be performed for the state, or for such county, city, town, township, school, or road district, to require every contractor for such work to furnish to the state, or to such county, city, town, township, school or road district, as the case may be, a bond with good and sufficient sureties, in an amount fixed by said officials, boards, commissions, commissioners, or agents of the state, or of such county, city, town, township, school or road district, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, lubricants, oil, gasoline, grain, hay, feed, coal and coke, repairs on machinery, groceries and foodstuffs, equipment and tools, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and for all other kinds of insurance, on said work,

and for all labor performed in such work whether by subcontractor or otherwise.

2. All bonds executed and furnished under the provisions of this section shall be deemed to contain the requirements and conditions as herein set out, regardless of whether the same be set forth in said bond, or of any terms or provisions of said bond to the contrary notwithstanding.

The statute declares three essential elements: (1) a duty on the board of a school district in *making contracts for public works of any kind* to be performed for the district, (2) to require *every contractor for such work* to furnish such district a bond, (3) for the payment *for all labor performed in such work whether by subcontractor or otherwise.*

The Directors accede that the undertaking to renovate the Lincoln South building was a contract for *public works* within § 107.170. They do not agree, however, that the work performed by AEC was of the kind that entitled them to the coverage of a bond under the statute. They argue, simply, that AEC supplied neither materials nor equipment used up in connection with the construction project at Lincoln South, so that its claim can only be for *labor performed in such work.* The Directors cite our decisions to the effect that, the common meaning of the word *laborer,* · and hence its meaning in the public works bond statute, is "one who labors with his physical powers in the service and under the direction of another for fixed wages." *Kansas City v. McDonald,* 80 Mo.App. 444, 448 (1899); *Missouri State Highway Comm'n v. Coopers Constr. Serv. Co.,* 268 S.W. 701, 702 (Mo.App.1925). Moreover [the argument continues], conformably to "the general rule regarding statutory interpretation," it is the meaning at the time of its enactment and not a meaning subsequently acquired, that is ascribed to the language of a statute. The argument concludes that since none of the several amendments of the original enactment of the public works bond statute has altered or broadened the term *labor performed in*

*such work,* the professional design work performed by the AEC employees—which, as a matter of common meaning, is not *labor* is not subsumed within the bond protection of § 107.170. The Directors do not contend that SCA was not a *contractor* within the meaning of the statute. They argue only that whether or not SCA was a *contractor* under § 107.170 is irrelevant because the work performed by AEC under the contract was not *labor.*

■ The public works bond statute was legislated by the Act of 1895, and virtually contemporaneously, in *Hydraulic Press Brick Co. v. School Dist.,* 79 Mo.App. 665 (1899), the court declared its design. "The evident purpose of the act is to give a right of action on the bond of the contractor to every person who would have a right to file and enforce a mechanic's lien on the building contracted for, [except] for the fact that [public buildings] are exempt from operation of the mechanic's lien law." *Id.* at 669. It is a declaration of purpose that continues to be reaffirmed. *Camdenton Consol. School Dist. ex rel. W.H. Powell Lumber Co. v. New York Casualty Co.,* 340 Mo. 1070, 104 S.W.2d 319, 322[1] (1937); *Redbird Eng'g Sales, Inc. v. Bi–State Dev. Agency,* 806 S.W.2d 695, 701[12] (Mo.App. 1991). Thus, where but for that exemption the claimant would show a right to a mechanic's lien, the claimant has a right of action on the contractor's bond. *Hydraulic Press Brick Co. v. School Dist.,* 79 Mo.App. at 669.

■ The public works bond statute reflects the public policy of a special legislative protection in favor for those who furnish labor and materials for public buildings. *First State Bank v. Reorganized School Dist.,* 495 S.W.2d 471, 483 (Mo.App. 1973). It imposes an equitable obligation on government to ensure payment to those who supply labor or materials on contracts for public works and so prevent unjust enrichment. *Id.; Redbird Eng'g Sales, Inc. v. Bi–State Dev. Agency,* 806 S.W.2d at 701[12]. To accomplish those ends, § 107.170 is read broadly to protect those who improve and enhance the public properties. *Public Water Supply Dist. No. 3*

*ex rel. Victor L. Phillips Co. v. Reliance Ins. Co.,* 708 S.W.2d 190, 192 (Mo.App. 1986).

■ Section 429.015 was enacted in 1971. Subsection 1 of that statute authorizes a real estate lien for every registered architect and every registered professional engineer who does any architectural or engineering work upon or connected with the erection or repair of any improvement upon the land. The provisions of chapter 429 that apply to liens of mechanics and other persons are made to apply to registered architects and registered professional engineers by subsection 4 of that statute. Thus the 1971 enactment specifically grants to registered architects and registered professional engineers a statutory lien generically equivalent to the mechanic's lien. *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d 38, 40[2, 3] (Mo. banc 1979). The Directors argue that the enactment of § 429.015 notwithstanding, the services of the architect and engineer do not constitute *labor,* and so remain outside the coverage of public works bond § 107.170. They cite the disparity between the language of the mechanic's lien law and the public works bond law and insist that § 107.170 must be interpreted "on the basis of its own language." They rest on two premises: (1) "[T]he language of a statute must be construed in accordance with its meaning *at the time of its enactment* rather than a meaning subsequently acquired" [original emphasis], (2) The wording of § 107.170 incorporates none of the provisions of § 429.015, "either specifically or generally." The disparity that remains and governs, we are told, is that § 107.170.1 confines the duty of the school district to require the contractor to furnish a bond for the payment of all *labor* performed in the public work, whereas § 429.-015 grants the right of lien to the architect and engineer for *services.*

■ Those arguments slight not only the very wording of § 429.015 as a legislative construct, but also the duty of the court to make legitimate inquiry into the legislative purpose and object of the statute. Section 429.015 not only engrafts the right of statutory lien to architects and professional

engineers who perform *services* [*see* subsection 1] onto the basic law that grants the right of statutory lien to mechanics who perform *labor* [*see* subsections 2, 3 and 4], but also constitutes them as generic equivalents within the mechanic's lien law. *Maran–Cooke, Inc. v. Purler Excavating, Inc.,* 585 S.W.2d at 40[2, 3]. Thus, both the *services* of architects and professional engineers and the *labor* of mechanics are ineluctably linked to the same precedents that construe public works bond § 107.170 as well as to the text itself.

It is indeed the primary rule of construction, as the Directors note, to ascertain the intent of the legislature from the ordinary and plain meaning of the language. But when necessary to give the fullest effect to the policy and objects of the legislature, the " 'circumstances and the usages of the time' " should also be considered. *Playboy Club, Inc. v. Myers,* 431 S.W.2d 228, 231[4] (Mo.1968); *St. Louis Southwestern Ry. Co. v. Loeb,* 318 S.W.2d 246, 252[1, 2] (Mo. banc 1958). And if a statute is amenable to more than one construction, "it must be given that which will best effect its purpose rather than one which would defeat it, even though such construction is not within the strict literal interpretation of the statute." *Household Fin. Corp. v. Robertson,* 364 S.W.2d 595, 602[5, 6] (Mo. banc 1963).

The object and purpose of § 107.170 within the "circumstances and usages of the time" of enactment were declared in the very first opinion to construe that section. *Hydraulic Press Brick Co. v. School Dist.,* 79 Mo.App. 665, found it "the evident purpose of the act" to give a right of action on the bond of the contractor *to every person who would have a right to file and enforce a mechanic's lien on the building contracted for were public buildings not exempt from the operation of the mechanic's lien law. Id.* at 669. The object of the statute was to include people within the protection of its provision and not exclude people. *Jackson County v. Freeborn Eng'g & Constr. Co.,* 174 Mo.App. 28, 160 S.W. 271, 274 (1913). To that end, the term *labor* as well as the public works bond statute itself, "like mechanic's lien statutes, should be liberally construed to carry out its purpose." *State ex rel. Winebrenner v. Detroit Fidelity & Sur. Co.,* 326 Mo. 684, 32 S.W.2d 572, 575[3–6] (1930).

Thus, from the earliest time of the enactment of § 107.170, our decisions have interrelated the inclusive objectives and manifest purposes of the public works bond law with those of the mechanic's lien laws. They are both meant to give protection to every person who would have the right to a mechanic's lien. They are and have been treated as *in pari materia.* All consistent statutes relating to the same subject matter are *in pari materia* and are construed together as though constituting one act. And that is so whether they are adopted at different dates or separated by short or long intervals. *Curators of Central College v. Rose,* 182 S.W.2d 145, 150 (Mo.1944). Statutes *in pari materia* are considered together to shed light on the statute being construed. *Weber v. Missouri State Highway Comm'n,* 639 S.W.2d 825, 829 (Mo. 1982).

Thus, that the wording of 107.170 "incorporates" none of the wording of § 429.015, as the Directors argue, does not diminish the force of the judicial gloss given to the public works bond section and the mechanic's lien section as laws *in pari materia* by congruent purpose. It courts absurdity to insist that because the public works bond statute is expressed in terms of *labor* but not *services,* and the architects and engineers lien section—enacted almost one hundred years later is expressed in terms of *services* but not *labor* that the interrelatedness of the subject matter ends abruptly and its mutual purpose thwarted. The purpose to equate *labor* and *services* to enable a statutory lien to those whose work has enhanced the value of the land is made evident in the very construct of § 429.015.

As a matter of equity as well as policy, the obligation on government under § 107.170 to protect those who improve and enhance public properties cannot be made to depend upon whether the statute that enables the lien is for *services* whereas § 107.170 is for *labor.* A person who has a right to an architect's lien is as unjustly deprived of payment as is one who has a right to a mechanic's lien, and the contractor is as unjustly enriched by the unpaid work of one as of the other.

It is presumed that at the enactment of § 429.015 in 1971, when the lien for services performed by architects and professional engineers was inserted into the mechanic's lien law, the legislature was aware of the declarations of law relating to the common purposes of the public works bond law and the mechanic's lien law. It is also presumed that § 429.015 was enacted concordantly with these declarations. *White v. American Republic Ins. Co.*, 799 S.W.2d 183, 189[2] (Mo.App.1990). The contention by the Directors that § 107.170 does not apply to the services and lien claim of registered architects SCA and registered engineers AEC [predecessors of plaintiffs EMC] under 429.015.1 is denied.

It was the absolute duty of the Directors of the School District under § 107.170 to require of SCA a payment bond as is described in the statute. On failure to perform that duty, the offending members of the board become personally liable to respond in damages to persons who thereby suffered loss. *Rupard Asphalt Co. v. O'Dell*, 382 S.W.2d 832, 834[1, 2] (Mo.App. 1964). The defendants' Directors failed that duty, and as a result the engineering services performed by AEC on the Lincoln South project were not fully paid. There is no dispute that the amount unpaid to EMC for the services of its predecessor, AEC, on that project is $17,913.10 with accumulated interest as of January 31, 1991 [at the contract rate of 11.5% per annum] of $2,231.61. Thus, a total of $20.144.71 is owed to EMC.

The judgment in favor of the individual defendants Directors of the School District of Kansas City, Missouri is reversed and remanded with directions that the court enter judgment against them in favor of Energy Masters Corporation for $20,144.71 and that the judgment shall bear interest from February 1, 1991 at the contract rate of 11.5% per annum.

All concur.