COLLINS & HERMANN, INC., Busy Bee Paving, Inc., Construction Logistics Equipment Company and Lawrence Excavating, Inc., Respondents/Cross–Appellants,

v.

TM2 CONSTRUCTION COMPANY, INC., Defendant,

and

Union Electric Company, d/b/a AmerenUE, Defendant/Appellant.

No. ED 90087.

Missouri Court of Appeals,
Eastern District,
Division Four.

Sept. 16, 2008.

James R. Keller, James D. Maschhoff, Herzog Crebs LLP, St. Louis, MO, for appellant Union Electric Company d/b/a AmerenUE.

Richard A. Stockenberg, Michael J. Zpevak, Robert B. Preston, Gallop, Johnson & Neuman, LC, St. Louis, MO, for Amicus Curiae Lafarge North America, Inc.

Neil J. Maune, St. Louis, MO, for respondent/cross-appellant Collins & Hermann, Inc.

Martin L. Daesch, Katherine Michelle Massa, Sandberg, Phoenix & Von Gontard, P.C., St. Louis, MO, for respondent/cross-appellant Busy Bee Paving, Inc.

Edward C. Vancil, Edward Vancil & Associates, Michael Eugene Doyel, co-counsel, St. Louis, for respondent/cross-appellant Lawrence Excavating, Inc.

Before MARY K. HOFF, P.J., and SHERRI B. SULLIVAN, J., and GEORGE W. DRAPER III, J.

*Opinion*

PER CURIAM.

Union Electric Company d/b/a AmerenUE ("AmerenUE") appeals from the judgment in favor of Collins & Hermann, Inc., Lawrence Excavating, Inc., Busy Bee Paving, Inc., and Construction Logistics Equipment Company (collectively "Subcontractors"). Subcontractors originally brought mechanic's liens against AmerenUE when the general contractor, TM2 Construction Company, Inc. ("TM2"), did not fully pay them for work they performed on several AmerenUE substations. The mechanic's liens were dismissed on the basis that AmerenUE is a quasi-public corporation and its substations are immune from mechanic's liens. Subcontractors obtained leave to file amended petitions alleging AmerenUE is liable under the Public Works Bond Statute (Section 107.170, RSMo 2000 [1]). The trial court entered its judgment in favor of Subcontractors on the bond statute claims. On appeal, AmerenUE argues the trial court erred in finding it was liable under Section 107.170 for not requiring TM2 to post a bond for Subcontractors' work because AmerenUE is not a "public entity" and its substations are not "public works" within the meaning of Section 107.170. We affirm.

*Factual and Procedural Background*

The parties submitted the case to the trial court upon a joint stipulation of facts, with oral argument in lieu of a trial with contested facts and testimony, which established the following: AmerenUE is a Missouri Corporation and wholly-owned subsidiary of Ameren Corporation, also a Missouri Corporation, publicly traded on the New York Stock Exchange. AmerenUE is in the business of supplying electric

---

1. Unless otherwise indicated, all further statutory references are to RSMo 2000.

and gas utility service to residents in large portions of the State of Missouri. AmerenUE is subject to regulation by the Missouri Public Service Commission (PSC) pursuant to Chapters 386 and 393 of the Missouri Revised Statutes. AmerenUE's authority to provide utility services to residents of the State of Missouri is derived solely from its regulation by the PSC.

AmerenUE owns certain real estate in Missouri where it has constructed electrical substations necessary to providing service to residents and businesses located in the areas surrounding the substations. In 2003 and 2004, AmerenUE entered into contracts for improvements at several of these substations located in St. Louis, Warren, and Jefferson Counties. TM2, as the general contractor, hired Subcontractors to perform the work on the substations, which was completed to the satisfaction of AmerenUE.

In October 2004, Subcontractors began complaining to AmerenUE that TM2 was not paying them. AmerenUE contacted TM2 and TM2 informed AmerenUE that it would pay Subcontractors. On January 5, 2005, TM2 filed for bankruptcy. At the time, TM2 had not fully paid for work performed on the substations. AmerenUE neither required TM2 to post any bonds or other financial security for the substation projects nor did it require lien waivers from TM2.

Subcontractors filed mechanic's liens against one or more AmerenUE substations. On July 5, 2005, Subcontractors filed petitions to enforce the mechanic's liens in St. Louis, Warren, and Jefferson Counties where the respective substations were located.[2] AmerenUE filed motions in each lawsuit seeking dismissal of the mechanic's liens claims. The trial courts in all three counties independently granted AmerenUE's motions to dismiss the mechanic's liens counts finding that AmerenUE is a "quasi-public regulated utility" and that the properties at issue are, therefore, "exempt from mechanic's liens."[3]

Thereafter, the three trial courts allowed Subcontractors to file amended lawsuits against AmerenUE alleging liability pursuant to Section 107.170. At the request of the parties, the three cases were consolidated before the St. Louis County trial court. The parties filed a joint stipulation of facts, which included a summary of payments AmerenUE had already made to Subcontractors. Based on these payments, all Subcontractors claims against AmerenUE for quantum meruit were either voluntarily dismissed or disposed of by the trial court in its judgment.

In its judgment, the trial court also found as follows with respect to Subcontractors' bond claims:

20. [Section] 107.170 requires all public entities in the State of Missouri to require every contractor for public works to furnish upon it a bond with good and sufficient sureties to protect all subcontractors, suppliers and materialmen.

21. It is the public policy in Missouri that the Mechanic's Lien Act and the Public Works Bond Act are to be construed to include people within their protection and not exclude....

22. Missouri courts have encouraged the policy of erring on the side of protection for contractors, subcontractors, laborers and materialmen....

23. Furthermore, [Section] 107.170 gives a right to surety bond protection

2. The petitions also included counts for breach of contract and quantum meruit.

3. We note the trial court in Warren County granted AmerenUE's motion to dismiss without explanation.

to every person who would otherwise have a right to file and enforce a mechanic's lien....

24. Missouri courts have created a judicial exception that excludes certain property that is owned by quasi public corporations from the operation of the mechanic's lien laws....

25. The AmerenUE substations that are the subject of all plaintiffs' claims fall within the quasi public exception to the mechanic's lien laws.

26. AmerenUE is heavily regulated by the Missouri Public Service Commission.

27. Since the substations are not subject to the mechanic's lien laws, AmerenUE was obligated to require TM2 to post bond. [Section] 107.170.

AmerenUE now appeals. Subcontractors have filed a joint cross-appeal arguing that if we find the trial court erred in holding AmerenUE was liable under Section 107.170, we must also find the trial court erred in dismissing Subcontractors' mechanic's lien claims under Section 429.010. Subcontractors contend that Missouri's long-standing public policy is to provide subcontractors protection either under the Mechanic's Lien Act or the Public Works Bond Act; therefore, if one does not apply, then the other must.

### Standard of Review

■■■ In a court-tried case, we will affirm the judgment of the trial court unless it is unsupported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). In a case tried on stipulated facts, the only issue on appeal is whether the trial court drew the proper legal conclusions from the stipulated facts. *Eisel v. Midwest BankCentre*, 230 S.W.3d 335, 337 (Mo. banc 2007). In making this determination, we accept the evidence and inferences favorable to the prevailing party and disregard all contrary evidence. *Id.* at 337–38. We review questions of law de novo. *Id.* at 338.

### Discussion

■■ In its sole point on appeal, AmerenUE argues the trial court erred in finding it was liable under Section 107.170 for not requiring TM2 to post a bond for Subcontractors' work because AmerenUE is not a "public entity" and its substations are not "public works" within the meaning of Section 107.170. We disagree.

The public policy of Missouri, as expressed in Section 429.010 and Section 107.170, is that subcontractors and suppliers are entitled to the protection of either mechanic's liens or payment bonds depending on the nature of the property they improve. *See Ladue Contracting Co. v. Land Development Co.*, 337 S.W.2d 578, 584 (Mo.App.1960) (purpose of the mechanic's lien law is to guarantee effective security to mechanics and materialmen who furnish labor and materials in the making of improvements on the property of others); *see also Energy Masters Corp. v. Fulson*, 839 S.W.2d 665, 669 (Mo.App. W.D.1992) (purpose of the bond requirement is to provide persons furnishing labor and material the bond security in lieu of mechanic's liens which are inapplicable to public property).

Chapter 429 governs mechanic's liens. Section 429.010, the statute that authorizes mechanic's liens, provides in pertinent part:

1. Any person who shall do or perform any work or labor upon land ..., or furnish any material ... for any building, erection or improvements upon land ... under or by virtue of any contract with the owner or proprietor thereof ..., upon complying with the provisions

of sections 429.010 to 429.340, shall have for his or her work or labor done, ... or materials ... a lien upon such building, erection or improvements, and upon the land belonging to such owner or proprietor on which the same are situated. Section 429.010.1; *Holland v. Cunliff*, 96 Mo.App. 67, 69 S.W. 737, 739–40 (1902).

Missouri courts have created an exception to the mechanic's lien law that bars the imposition of mechanic's liens on public property owned by a traditional governmental body held for the "benefit of the public" and "reasonably necessary for public use." *River's Bend Red–E–Mix, Inc. v. Parade Park Homes, Inc.*, 919 S.W.2d 1, 3 (Mo.App. W.D.1996); *see also Redbird Engineering Sales, Inc. v. Bi–State Development Agency of Missouri–Illinois Metropolitan Dist.*, 806 S.W.2d 695, 697 (Mo.App. E.D.1991); *Union Reddi–Mix Co. v. Specialty Concrete Contractor*, 476 S.W.2d 160, 161–62 (Mo.App.1972).

Section 107.170 provides impertinent part:

> 2. It is hereby made the duty of all public entities in this state, in making contracts for public works, the cost of which is estimated to exceed twenty-five thousand dollars, to be performed for the public entity, to require every contractor for such work to furnish to the public entity, a bond with good and sufficient sureties, in an amount fixed by the public entity ...

Section 107.170.1(2) defines a "public entity" as "any official, board, commission or agency of this state or any county, city, town, township, school, road district or other political subdivision of this state." Section 107.170.1(3) defines "public works" as "the erection, construction, alteration,

repair or improvement of any building, road, street, public utility or other public facility owned by the public entity." Sections 386.020(15) and (42) define an "electrical corporation," such as AmerenUE,[4] as a "public utility." Section 107.170.2 applies to the erection, construction, repair, etc., of a "public utility" owned by a "public entity." Section 107.170.1(3). The term "public entity" includes an "agency of this state." Section 107.170.1(2). A "state agency" is defined as "each board, commission, department, officer or other administrative office or unit of the state ... existing under the constitution or statute, and authorized by the constitution or statute to make rules or to adjudicate contested cases." Section 536.010(8). Under Chapters 386 and 393, AmerenUE is subject to regulation by the PSC and AmerenUE's authority to provide utility services is derived solely from its regulation by the PSC, which is a state agency. *See State ex rel. Atmos Energy Corp. v. Public Service Com'n of State*, 103 S.W.3d 753, 756–57 (Mo. banc 2003).

In *Johnson Controls, Inc. v. Citizens Memorial Hosp. Dist.*, 952 S.W.2d 791, 793 (Mo.App. S.D.1997), the court reiterated the purposes behind Section 107.170:

> (1) to provide a remedy to entities who would have a right to file and enforce a mechanic's lien except that public property is involved; (2) to facilitate construction of public works; and (3) to prevent unjust enrichment of those who receive a material benefit from a material furnisher or subcontractor.

*See also Energy Masters Corp.*, 839 S.W.2d at 668; *Redbird Engineering Sales, Inc.*, 806 S.W.2d at 700–01; *Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W.H. Powell Lumber*

---

4. In the stipulated facts, AmerenUE admits that it is an electric corporation providing utility services to residents of Missouri.

Co. v. New York Cas. Co., 340 Mo. 1070, 104 S.W.2d 319, 322 (Mo. banc 1937). Section 107.170 must be broadly construed to carry out this purpose. Energy Masters Corp., 839 S.W.2d at 668–69.

Moreover, Missouri courts have treated the mechanic's lien and public works bond statutes as in pari materia, meaning that: "All consistent statutes relating to the same subject matter are ... construed together as though constituting one act." Id. at 669. The statutes are meant to give protection to every person who would have the right to a mechanic's lien. Id.; see also Board v. Eurostyle, Inc., 998 S.W.2d 810, 815 (Mo.App. S.D. 1999) (citing Redbird Engineering Sales, Inc., 806 S.W.2d at 701) (the protection Section 107.170 provides workers on public works projects are in lieu of protection mechanics' lien laws provide workers on private projects). When Sections 429.010 and 107.170 are read together, the logical conclusion is that the legislature intended to create an "inclusive" protection for those furnishing labor and materials. Energy Masters Corp., 839 S.W.2d at 669.

The purpose of Section 107.170 has long been to afford to those furnishing labor or material on public work the same measure of protection as is afforded by the mechanic's lien law where the building or improvement is not of a public character. Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W.H. Powell Lumber Co., 104 S.W.2d at 322; City of St. Louis, to Use of Stone Creek Brick Co. v. Kaplan–McGowan Co., 233 Mo.App. 789, 108 S.W.2d 987, 989 (1937); City of St. Louis v. Hill–O'Meara Const. Co., 175 Mo. App. 555, 158 S.W. 98, 100 (1913). Section 107.170 gives a right to surety bond protection to every person who would otherwise have a right to file and enforce a mechanic's lien. Hydraulic Press Brick

Co. v. School Dist. of Kirkwood, 79 Mo. App. 665, 669 (Mo.App.1899).

In Redbird Engineering Sales, Inc., a subcontractor brought an action seeking imposition of a mechanic's lien on property owned by Bi–State Development Agency (Bi–State), a nonprofit corporation involved in the construction of a public transportation facility, after the contractor failed to pay the amount owed for materials. Redbird Engineering Sales, Inc., 806 S.W.2d at 696–97. The court noted that although Bi–State was not a governmental entity, its creation was authorized by an interstate compact and state statute to serve the public's transportation needs. Id. at 698. Therefore, the court concluded, Bi–State's property, a garage where public buses were kept and repaired, was "reasonably necessary for public use," and rendered the property exempt from the mechanic's lien. Id. In so finding, the court held that a "quasi-public corporation," such as Bi–State, was encompassed within the exception barring the imposition of mechanic's liens on property held for public use. Id. The court reasoned that the rationale for the exception applying to a quasi-public corporation is the same as that given when the property is held by traditional governmental entities: to keep intact the property belonging and essential to the operation of the public good. Id. In addition, the court concluded that Bi–State was an "agent" of the state given its responsibility pursuant to the compact. Id. at 700.

In 1995, the Missouri legislature amended Section 107.170 by replacing the phrase "agent of the state" with "agency of the state." AmerenUE devotes considerable space in its brief speculating on the legislative intent being this change. Unlike AmerenUE, we do not believe the legislature intended to "restrict" the definition of a public entity in response to Redbird Engi-

*neering Sales, Inc.* In fact, the court in *Redbird Engineering Sales, Inc.* warned against undercutting the legislative intent and purpose of extending coverage of Section 107.170 to all those who otherwise would not have lien protection:

> Failure to give the normal and usual meaning to the word and phrase [agent or agent of the state] would mandate exemption from Section 107.170 of all contracts let by the state through its agents. This reading would contract, not expand, the coverage of Section 107.170, defeating both the intent and purpose of the statute. . . . Such a ruling would be incompatible with those cases, and a myriad of others, espousing liberality in our dealing with Section 107.170.

*Redbird Engineering Sales, Inc.,* 806 S.W.2d at 700. Also, in *River's Bend Red–E–Mix, Inc.,* a decision which followed *Redbird Engineering Sales, Inc.,* the court noted it could be argued that a public utility, such as a gas or electric company, was an "agent" within the purview of Section 107.170. *River's Bend Red–E–Mix, Inc.,* 919 S.W.2d at 3 n. 1.

Following the public policy behind the mechanic's lien and public bond statutes, here, AmerenUE, like Bi–State, is subject to the provisions of Section 107.170. AmerenUE is a "public utility" operated in the public interest and its substations are "reasonably necessary for public use." While AmerenUE, unlike Bi–State, is an investor-owned utility company this difference is not an important one in terms of the public policy behind Section 107.170. AmerenUE is subject to heavy regulation by the PSC and its authority to provide essential utility services to the residents of the State of Missouri derives solely from its regulation by the PSC. *State ex rel. Atmos Energy Corp.,* 103 S.W.3d at 756–57. Therefore, AmerenUE, like Bi–State, is providing a public service and operating in the public interest. *Redbird Engineering Sales, Inc.,* 806 S.W.2d at 698.

Contrary to AmerenUE's contentions, we find AmerenUE is distinguishable from the public hospital district in *Johnson Controls, Inc.,* which the court found was not an "agent of the state." *Johnson Controls, Inc.,* 952 S.W.2d at 793–94. In *Johnson Controls, Inc.,* the court concluded a public hospital district was not an "agent of the state" within the meaning of Section 107.170 because it did not act on the state's behalf and did not receive its authority to exist from the state. *Id.* AmerenUE is distinguishable from the public hospital district in that AmerenUE is pervasively regulated by the PSC and its authority to provide electrical services to Missouri residents derives solely from its regulation by the PSC.

Here, the record and the applicable law support the trial court's findings that AmerenUE, a "quasi-public corporation" whose property is affected with a public use, was not subject to a mechanic's lien. *Redbird Engineering Sales, Inc.,* 806 S.W.2d at 698. We also find that Sections 429.010 and 107.170 are intended to provide "inclusive" protection to those furnishing labor and materials. *Energy Masters Corp.,* 839 S.W.2d at 669; *Eurostyle, Inc.,* 998 S.W.2d at 815. Therefore, because the trial court correctly found AmerenUE is a "quasi-public regulated utility" exempt from mechanic's lien claims under Section 429.010, it is required to post bond pursuant to Section 107.170. Point denied. The cross-appeal is moot.

*Conclusion*

The judgment is affirmed.