Greg THOMAS, et al., Appellants,

v.

A.G. ELECTRICAL, INC.,
et al., Defendants,

and

Contractors Bonding and Insurance
Company, Respondent.

No. ED 92109.

Missouri Court of Appeals,
Eastern District,
Division Two.

Nov. 24, 2009.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 8, 2010.

Application for Transfer Denied
March 23, 2010.

J. Christopher Chostner, Arthur J. Martin, St. Louis, MO, for appellants.

Martin L. Daesch, St. Louis, MO, for respondent.

LAWRENCE E. MOONEY, Judge.

Workers on a public-works project sued to recover unpaid prevailing wages from the bonding company that had issued two bonds on the project. The trial court dismissed the workers' claims. Because we hold that the Performance Bond issued by the bonding company covers the workers' claim, and because we conclude that the notice-of-claim provision in the Payment Bond issued by the bonding company does not negate the workers' claim, we reverse and remand.

***Factual and Procedural Background***

Abdelmalek Construction, L.L.C., a general contractor in the building construction industry, contracted with the St. Charles School District to complete work on the Lewis and Clark Vocational Technical School Renovations and Additions Project. Prior to commencing work on the project, Abdelmalek Construction, as the general contractor, purchased two bonds from Contractors Bonding and Insurance Company, to insure the general contractor's work on the project. These two bonds, entitled and referred to as the Perform-

ance Bond and the Payment Bond, are at the heart of the instant dispute.

After securing the contract with the school district, the general contractor entered into a contract with A.G. Electrical, Inc., an electrical contractor, to perform electrical work on the Lewis and Clark project. The plaintiff-workers in this action performed work on the Lewis and Clark project as employees of this electrical subcontractor.[1] The electrical contractor paid the workers, but failed to pay the workers the prevailing wage for their work on the project.[2] The difference between the wages and benefits received by the workers, and the wages and benefits they should have received under Missouri's Prevailing Wage Law, amounted to $20,364.24.

The workers, by letter dated May 29, 2007, made alternative claims on the Performance Bond and the Payment Bond, to recover the prevailing wages that had not been paid to them for their work on the project. The bonding company denied the workers' claims. Consequently, the workers filed suit against the bonding company, which was the surety on the two bonds, to recover their unpaid wages, as well as statutory damages and attorneys' fees.[3]

The bonding company filed a motion to dismiss the workers' two claims for failure to state a cause of action. As to the Performance Bond, the company argued that the workers' claim should be dismissed because the workers had not timely sued and because the bond did not cover the workers' prevailing-wage claim. The company argued the Performance Bond only insured the completion of work on the Lewis and Clark project, not payment of labor or the prevailing wage because the Payment Bond had been issued for those purposes. As to the workers' claim against the Payment Bond, the company argued that the workers' claim was time-barred, and thus should be dismissed, because the workers did not comply with the ninety-day notice requirement set forth in that bond.

The trial court granted the bonding company's motion and dismissed the workers' claims. The court reasoned that the workers' prevailing-wage claim was not covered by the Performance Bond, and that their claim on the Payment Bond was untimely pursuant to the ninety-day notice provision in that bond. The workers appeal, alleging the trial court erred in dismissing their two claims. We shall address the workers' claim against each bond in turn.

### Standard of Review

Appellate review of a trial court's grant of a motion to dismiss is *de novo*. *Lynch v. Lynch*, 260 S.W.3d 834, 836 (Mo. banc 2008). "A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition." *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993); *Stein v. Novus Equities Co.*, 284 S.W.3d 597, 601 (Mo.App. E.D.2009). When this

1. Worker Greg Thomas last worked on the project on November 6, 2005; worker Igal Dechteriov last worked on the project on September 11, 2005; and worker Tony Harmon last worked on the project on September 4, 2005.

2. Fawzy Abdelmalek, the Principal Manager of Abdelmalek Construction and the President of A.G. Electrical, has allegedly acknowledged in a payment agreement with the Missouri Division of Labor Standards that the electrical contractor failed to pay the workers the prevailing wage on the project.

3. Section 522.300 authorizes individuals furnishing material or performing labor, either as an individual or as a subcontractor for any contractor, to bring suit on public-works bonds in the name of the public body, here the St. Charles R–6 School District.

Court reviews the dismissal of a petition for failure to state a claim, we treat the facts contained in the petition as true and construe them liberally in favor of the plaintiff. *Lynch*, 260 S.W.3d at 836; *Stein*, 284 S.W.3d at 601. We do not attempt to weigh whether the factual allegations are credible or persuasive. *Nazeri*, 860 S.W.2d at 306; *Stein*, 284 S.W.3d at 601. Nor do we address the merits of the case or consider evidence outside the pleadings. *Ryann Spencer Group, Inc. v. Assurance Co. of America*, 275 S.W.3d 284, 287 (Mo.App. E.D.2008). Rather, we review the petition "in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case." *Nazeri*, 860 S.W.2d at 306; *Stein*, 284 S.W.3d at 601. "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." *Lynch*, 260 S.W.3d at 836; *Stein*, 284 S.W.3d at 602. A petition states a cause of action if "its averments invoke principles of substantive law that may entitle the plaintiff to relief." *Id.* (internal quotation omitted). "A petition cannot be dismissed for failure to state a claim unless it appears that the plaintiff can prove no set of facts in support of the claim that would give a right to relief." *Thomas v. B.K.S. Development Corp.*, 77 S.W.3d 53, 58 (Mo.App. E.D. 2002).

*General Prevailing Wage Law*

▮ The public policy of Missouri, declared by the General Assembly, mandates that no less than the prevailing hourly rate of wages be paid to workers employed by or on behalf of any public body engaged in public works. Section 290.220 RSMo 2000.[4,5] The Missouri Prevailing Wage Act, codified at Sections 290.210 through 290.340, provides the mechanism for implementing this policy. *Board v. Eurostyle*, 998 S.W.2d 810, 814 (Mo.App. S.D.1999). The Act is based upon and has a similar purpose to the federal Davis–Bacon Act, 40 U.S.C. Section 276a *et seq.* (2003), which is intended "to ensure that workers on public projects be paid reasonable wages." *Long v. Interstate Ready–Mix, L.L.C.*, 83 S.W.3d 571, 574 (Mo.App. W.D.2002). The Act was enacted "in the interest of public welfare." *Id.* The Act is remedial in nature, and thus we must "interpret it broadly so as to accomplish the greatest public good." *Id.*

Consistent with this declared public policy, the Act expressly provides that "all workmen employed by or on behalf of any public body engaged in the construction of public works" be paid "not less than the prevailing hourly rate of wages for work of similar character in the locality in which the work is performed." Section 290.230.1.[6] Correspondingly, the Act demands that a contractor that is awarded a

---

**4.** All statutory citations are to RSMo 2000.

**5.** In full, Section 290.220 reads:

It is hereby declared to be the policy of the state of Missouri that a wage of no less than the prevailing hourly rate of wages for work of a similar character in the locality in which the work is performed shall be paid to all workmen employed by or on behalf of any public body engaged in public works exclusive of maintenance work.

**6.** In full, Section 290.230.1 provides:

Not less than the prevailing hourly rate of wages for work of similar character in the locality in which the work is performed, and not less than the prevailing hourly rate of wages for legal holiday and overtime work, shall be paid to all workmen employed by or on behalf of any public body engaged in the construction of public works, exclusive of maintenance work. Only such workmen as are directly employed by contractors or subcontractors in actual construction work on the site of the

public-works and any subcontractor under that contractor pay not less than the prevailing hourly rate of wages to all workmen performing work under the contract. Section 290.250.

Contractors on a public-works project are required to obtain bonds that assure payment of wages earned by their workers and workers employed by subcontractors. The pertinent requirements here are those in the Act itself and those that are set forth in the general public-works bond statute, Section 107.170.

At the time the general contractor secured the two bonds at issue in this case, the Prevailing Wage Act contained the following mandate:

> It [the public body awarding the contract] shall also require in *all* contractor's bonds that the contractor include such provisions as will guarantee the faithful performance of the prevailing hourly wage clause as provided by contract.

Section 290.250 (emphasis added).[7]

The public-works bond statute mandates that contractors, to whom a contract for a public-works project is awarded,[8] furnish the public entity awarding the contract a bond with good and sufficient sureties. Section 107.170.2.[9] "Such bond, among other conditions, shall be conditioned for the payment of any and all materials, incorporated, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and for all other kids of insurance, said work, and *for all labor performed* in such work whether by subcontractor or otherwise." Section 107.170.2 (emphasis added). The public-works bond statute further mandates that:

> "*All* bonds executed and furnished under the provisions of this section shall be deemed to contain the requirements and conditions as herein set out, regardless of whether the same be set forth in said bond, or of any terms or provisions of said bond to the contrary notwithstanding."

Section 107.170.3 (emphasis added).

 The public-works bond statute demonstrates a "strong legislative purpose

---

building or construction job shall be deemed to be employed upon public works. The statutory terms "prevailing hourly rate of wages," "locality", "workmen," "public body," "construction," "public works," and "maintenance" are specifically defined in the Act's definitional section, Section 290.210. The workers have alleged in their petition that they were "workmen," that the St. Charles School District is a "public body," that the Lewis and Clark project was a "public works" project, all as defined by Section 290.210; they also alleged that the work they performed on the project was covered by the Act, as set forth in Section 290.230. The bonding company has not contested the adequacy of these allegations. Under our *de novo* review, we find the workers' pleadings adequate.

7. The General Assembly amended Section 290.250 in 2007, after the present lawsuit was filed, and removed this sentence from the statute.

8. The cost of which is estimated to exceed twenty-five thousand dollars.

9. Section 107.170.2 reads in its entirety:

> It is hereby made the duty of all public entities in this state, in making contracts for public works, the cost of which is estimated to exceed twenty-five thousand dollars, to be performed for the public entity, to require every contractor for such work to furnish the public entity, a bond with good and sufficient sureties, in an amount fixed by the public entity, and such bond, among other conditions, shall be conditioned for the payment of any and all materials, incorporated, consumed or used in connection with the construction of such work, and all insurance premiums, both for compensation, and of all other kids of insurance, said work, and for all labor performed in such work whether by subcontractor or otherwise.

to protect those who furnish labor and materials for public construction and to assure that they will be paid." *School Dist. of Springfield R–12, ex rel. Midland Paving Co. v. Transamerica Ins. Co.*, 633 S.W.2d 238, 248 (Mo.App. S.D.1982); *see also Energy Masters Corp. v. Fulson*, 839 S.W.2d 665, 668 (Mo.App. W.D.1992). The long-established purpose of the public-works bond statute has been "to afford those furnishing labor or material on public works the same measure of protection as is afforded by the mechanic's lien law where the building or improvement is not of a public character." *Collins & Hermann, Inc. v. TM2 Construction Co.*, 263 S.W.3d 793, 798 (Mo.App. E.D.2008)(citing *Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W.H. Powell Lumber Co.*, 340 Mo. 1070, 104 S.W.2d 319, 322 (1937)); *see also Fulson*, 839 S.W.2d at 668. The public-works statute is read broadly to carry out its purpose to protect those who improve and enhance the public properties. *Fulson*, 839 S.W.2d at 668.

▆▆▆▆ Workmen who are due, but who are not paid, the prevailing hourly rate of wages are afforded a remedy under the Prevailing Wage Act. This afforded remedy goes beyond that of simple restitution. The Act expressly provides that the workman "shall have a right of action for double whatever difference there may be between the amount so paid and the rates provided by the contract [the prevailing hourly rate of wage] together with a reasonable attorney's fee...." Section 290.300. Moreover, workers on public-works construction projects have the right to sue on any bond executed pursuant to Section 107.170 that covers the project on which they worked. *See* Section 522.300; *Eurostyle*, 998 S.W.2d at 813. "General principles of surety law dictate that the liability of a surety is coextensive with that of its principal." *City of Kansas City ex rel. Jennings v. Integon Indem. Corp.*, 857 S.W.2d 233, 236 (Mo.App. W.D.1993). "Thus, the rights and liabilities of a surety are measured by those of the principal, absent an agreement to the contrary." *Id.* No such contrary agreement has been asserted in this case. Consequently, as a surety, the bonding company's liability in this case is coextensive with that of the general contractor. *See Bonney v. Environmental Engineering, Inc.*, 224 S.W.3d 109, 114 (Mo.App. S.D.2007); *Jennings*, 857 S.W.2d at 236.

As noted above, the general contractor procured two bonds: a Performance Bond and a Payment Bond. We discuss the workers' claim against each in turn.

### Performance Bond

▆▆▆▆ The workers brought an action against the bonding company, contending the company, as the surety on the Performance Bond, was liable under the Prevailing Wage Act for the unpaid prevailing wages as well as statutory damages and attorneys' fees. The bonding company moved to dismiss the workers' claim, arguing that the workers' claim was not covered by the bond. The company's argument, reduced to its essence, is that the Payment Bond, not the Performance Bond, insured payment of the prevailing wage.

The company advanced a two-pronged argument in support of its position that the Performance Bond did not insure the payment of the prevailing wage. First, the company argued that the Performance Bond was not executed and furnished under the provisions of Section 107.170 because the Payment Bond was executed and furnished for that purpose. The company vouched that the contractor had thereby complied with the bonding requirements of Section 107.170 and Section 290.250 by securing the Payment Bond, the terms of which specifically provide for payment of

"all labor and material used." The company asserted that it separately issued the Performance Bond only to insure the completion of work on the Lewis and Clark project. The company argued that Section 107.170 and Section 290.250 do not require the issuance of two bonds to ensure payment of the prevailing wage nor do they mandate that every bond obtained by a contractor provide for the payment of prevailing wages. In the company's opinion, because it had already issued the Payment Bond in compliance with Section 107.170 and Section 290.250, those sections—and the resulting requirement to guarantee the payment of the prevailing wage—do not apply to the Performance Bond.

Secondly, the company argued that the clear and plain language of the Performance Bond shows that the bond does not insure payment of the prevailing wage. The company notes that the Performance Bond has no such "payment" coverage, as is included in the Payment Bond, and that by its terms, the Performance Bond is limited solely to claims based on "default for failing to perform the construction work under the contract."

The trial court dismissed the workers' claim, reasoning that the workers' prevailing-wage claim was not covered by the Performance Bond. We hold the trial court's ruling to be in error because the plain language of the Prevailing Wage Act mandated that all contractors' bonds guarantee the payment of the prevailing wage.

The Performance Bond issued by the bonding company provides that the bonding company, as surety, becomes obligated if and when the general contractor is declared to be "in default for failing to perform the construction work under the contract. . . ." The bond is silent as to the bonding company's obligations under the Prevailing Wage Act. The language of the Prevailing Wage Act, however, speaks to the bonding company's obligation, and the language is patently clear. At the time the bonding company issued the Performance Bond, the Act required that *all* contractors' bonds "include such provisions as will guarantee the faithful performance of the prevailing hourly wage clause as provided by contract." Section 290.250. Whether the bonding company has satisfied its obligation under the general public-works bonding requirements of Section 107.170 by issuing the Payment Bond is irrelevant to determining whether the Performance Bond is subject to the bonding requirements of the Prevailing Wage Act. The General Assembly has created a statutory remedy and cause of action for workers who are not paid the prevailing wage; this remedy may not be defeated by the voluntary act or by the oversight on the part of the parties in failing to insert a provision regarding the prevailing wage into the bond.[10] *Camdenton Consol. School Dist. No. 6 of Camden County ex rel. W.H. Powell Lumber Co. v. New York Casualty Co.*, 340 Mo. 1070, 104 S.W.2d 319, 325 (1937). Courts have also rejected attempts to escape liability by characterizing bonds as non-statutory. *Id.* Parties may not "circumvent the prevailing wage law by a carefully constructed legal facade." *See Division of Labor Standards, Department of Labor and Industrial Relations, State of Mo. v. Friends of the Zoo of*

10. We acknowledge that, in certain contexts, Missouri courts have differentiated between performance bonds and payment bonds. *See, e.g., Miller–Stauch Constr. Co. v. Williams–Bungart Electric, Inc.*, 959 S.W.2d 490 (Mo. App. W.D.1998). These cases, however, do not include claims for prevailing wages and, thus, are of no assistance to the bonding company; the Missouri legislature mandated that payment of the prevailing wage be guaranteed by all bonds.

*Springfield, Missouri, Inc.*, 38 S.W.3d 421, 423 (Mo. banc 2001).

■ Again, the Act mandated that *all* contractors' bonds guarantee the payment of the prevailing wage. Simply put, all bonds are all bonds. The Performance Bond at issue here covers the workers' prevailing-wage claim. The trial court erred in concluding otherwise. We grant this point, and reverse the trial court's decision dismissing the workers' action against the Performance Bond.[11]

### Payment Bond

■ The workers alternatively made a claim against the Payment Bond to recover their unpaid wages, as well as statutory damages and attorneys' fees. The bonding company moved to dismiss the workers' claim, arguing that the claim was time-barred because the workers did not comply with the ninety-day notice requirement set forth in the bond. That notice-of-claim provision reads as follows:

> ... a *Claimant having a direct contractual relationship with a subcontractor* of the Principal [Abdelmalek Construction, LLC] *shall have a right of action on this bond only if said Claimant notifies the Surety* [CBIC] *in writing of its claim within ninety (90) days from the date on which said Claimant did or performed the last labor* and/or

materials for which the claim is made....

(Emphasis added). The workers' last days of work were November 6, 2005, September 11, 2005, and September 4, 2005. The workers did not notify the bonding company of their claim against the bond until May 29, 2007. The trial court dismissed the workers' claim as untimely. We hold the trial court erred because the bonding company showed no prejudice from the workers' delayed notice.

■ In reaching this decision, we find guidance in the courts' approach to notice provisions included in insurance policies. The modern trend among Missouri courts has been to exercise restraint in requiring strict compliance with the terms of notice provisions. *Weaver v. State Farm Mut. Auto. Ins. Co.*, 936 S.W.2d 818, 819–20 (Mo. banc 1997). Courts have recognized that the function of a notice requirement is simply to protect the insurer from being prejudiced. *Id.* Our Missouri Supreme Court has cited with approval the following persuasive analysis of the issue from the Louisiana court:

> The function of the notice requirements is simply to prevent the insurer from being prejudiced, not to provide a technical escape-hatch by which to deny coverage in the absence of prejudice nor to evade the fundamental protective pur-

11. The bonding company also moved to dismiss the workers' claim on grounds that the claim was made out of time. The Performance Bond states, in pertinent part, that: "[a]ny suit by the obligee [school district] under this bond must be instituted before the earlier of: (a) the expiration of one year from the date of substantial completion of the work, or (b) one year after the Principal [Abdelmalek Construction, LLC] ceased performing the construction work under the Contract." The bonding company argues that because the workers did not comply with this contractual period of limitations, the workers failed

to state a cause of action against the bond. We note that the trial court did not rely on this ground in dismissing the workers' claim. Nor did the bonding company argue this ground on appeal. Nevertheless, under our standard of review, we will affirm the trial court's dismissal of an action if any ground within the motion to dismiss supports the trial court's ruling, regardless of whether the trial court relied on that ground. *Bohac v. Walsh*, 223 S.W.3d 858, 861 (Mo.App. E.D.2007). For the reasons set forth in our discussion of the Payment Bond, we do not affirm the trial court's ruling on this ground.

pose of the insurance contract to assure the insured and the general public that liability claims will be paid up to the policy limits for which premiums were collected.

*Weaver*, 936 S.W.2d at 820 (quoting *Miller v. Marcantel*, 221 So.2d 557, 559 (La.App. 1969)). "Where the insurance company's interests have not been harmed by a late notice ... the reason behind the notice condition in the policy is lacking." *Weaver*, 936 S.W.2d at 820 (quoting *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193, 197 (1977)). In such a situation, "[i]t follows neither logic nor fairness to relieve the insurance company of its obligations under the policy." *Id.* In Missouri, courts treat the failure of an insured to provide timely notice as an affirmative defense. *Weaver*, 936 S.W.2d at 821. Absent a showing of prejudice by the insurance company, the insurer cannot defeat its liability under the policy. *Id.*; *see also Farm Bureau Town and Country Ins. Co. of Missouri v. Rogers*, 959 S.W.2d 880 (Mo.App. S.D.1997)(affirming declaration that insurance company obligated under policy; insurer failed to demonstrate that it was prejudiced by insured's failure to give written notice of claim for five years following accident, even though policyhold-er was deceased at the time claim made, where there were no witnesses to the accident, medical records were still available, and the insurer did not investigate site upon notification and did not show what additional information would have been available had it received earlier notice).

The function of the notice requirement in the bond is the same as that in insurance policies. Indeed, the bonding company concedes that its notice-of-claim provision exists to afford them an opportunity to investigate the claim. It follows, then, that the notice-of-claim provision should not be strictly construed, nor should liability under the bond be avoided, absent a showing of prejudice. The present case is presently at the pleading stage, on the bonding company's motion to dismiss for failure of the workers to state a claim. Because this Court is reviewing the dismissal of the workers' petition, we must regard all facts alleged in the workers' petition as true. The bonding company at this juncture has not asserted, shown, or argued that it has been prejudiced by the workers' delay in notifying it of their prevailing-wage-act claims.[12] The notice-of-claim provision in the Payment Bond, therefore, does not negate the worker's claim.[13]

12. A surety may be hard-pressed to show prejudice in a prevailing-wage-act case because the nature of the wrong—an underpaid employee—does not likely become more difficult to investigate over time despite a lack of prompt notice.

13. We acknowledge the parties' skilled arguments. The workers urge this Court to find the notice-of-claim provision void and unenforceable because the provision effectively and impermissibly shortens the three-year statute of limitations for prevailing-wage claims, contrary to the dictates of Section 431.030. The bonding company, on the other hand, asks that we draw a distinction between the notice-of-claim provision and the statute of limitations. The company also directs this Court's attention to a line of cases in which Missouri courts have recognized the validity and enforceability of notice-of-claim provisions contained in bonds securing public-works contracts. The workers, however, argue that these cases are inapposite because none concern an action to enforce the prevailing wage. It may well be that the notice-of-claim provision runs afoul of the long-established law and the stated public policy of Section 431.030, which mandates that "[a]ll parts of any contract or agreement ... which either directly or indirectly limit or tend to limit the time in which any suit or action may be instituted, shall be null and void." It may also be that the provision undermines the purpose and intent of the Prevailing Wage Act, which evinces a strong public policy to

## Conclusion

To conclude, we reverse the trial court's decision dismissing the workers' claim against the Performance Bond, and we reverse the trial court's decision dismissing the workers' claim against the Payment Bond. The workers' petition, on its face, adequately states alternative causes of action against each bond. We remand the cause to the trial court for further proceedings.

ROY L. RICHTER, P.J., and GEORGE W. DRAPER III, J., concur.

protect workers on public-works projects and to ensure that those workers are paid the prevailing wage. Missouri's legislature mandated that "[n]o person, firm or corporation shall violate the wage provision of any contract ... or suffer or require any employee to work for less than the [prevailing wage]." Section 290.305. So strong is this policy that our legislature provided an enhanced remedy for workmen denied the prevailing hourly rate of wages. Perhaps the parties, required by law to insure their obligation to pay the prevailing wage, and subject to suit for failing to do so, are not free to avoid liability by constructing a notice period shorter than the express three-year statute of limitations established by the General Assembly. We do not decide these issues today, however, for, even if the provision is valid and enforceable, no prejudice has been pleaded, shown, or argued.